COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-03-446-CR

 

 

JACKIE GLYNN SIMMONS                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM
THE 367TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Appellant Jackie Glynn
Simmons appeals from his conviction for possession of a controlled substance
with intent to deliver.  In four points,
Appellant contends that the evidence was insufficient to corroborate the
testimony of a covert witness, that the evidence was legally insufficient to
support Appellant=s conviction
when the uncorroborated testimony of the covert witness is excluded from
consideration, and that the trial court=s failure to instruct the jury on the requirement of corroboration was
reversible error.  We reverse and remand.








                                            Background

Narcotics Detective Jeffrey
Davis of the Denton Police Department testified that on February 11, 2003, he
executed a search warrant at the residence of Paul Baccus in Lewisville, Denton
County, Texas.  Inside the residence,
officers located a controlled substance and arrested Baccus.  Baccus asked Detective Davis if there was
anything he could do to avoid going to jail. At Detective Davis=s request, Baccus agreed to contact a source of his, whom he
identified as Appellant.  The ultimate
agreement required Baccus Ato complete six case credits@ in order to get his case dismissed. 

Detective Davis testified
that, in his presence, Baccus telephoned Appellant and set up a meeting to have
Appellant deliver a quarter of a kilogram of cocaine to Baccus for sale to
Detective Davis, who would be undercover as ABig Louie,@ at a
Hooters restaurant in Lewisville. 
Detective Davis could only hear Baccus=s side of the conversation.  He
further testified  Baccus left the
location in his own vehicle, followed by Detective William Scott, while
Detective Davis went to the Hooters Restaurant to orchestrate the arrest team.
Detective Davis stated Baccus=s vehicle was searched before Baccus left to meet Appellant, and no
controlled substances were found in the vehicle.  








Detective Davis explained he
was in contact with Baccus and Detective Scott by telephone from the Hooters
Restaurant in Lewisville, while Detective Scott followed Baccus to a gas
station in Dallas at the intersection of Inwood and I-35.  There, he said, Baccus met with Appellant and
Horace Minafee, who was with Appellant in Appellant=s vehicle.  Detective Davis
testified he was not expecting Baccus to meet with anyone else, only
Appellant.  It is unclear from Detective
Davis=s testimony if he expected Baccus to rendezvous with Appellant at the
gas station or if the meeting in Dallas was unexpected.  Detective Davis admitted he did not put in
his report any information regarding the stop at the gas station.  Detective Davis stated that Baccus,
Appellant, and Minafee then drove on to the Hooters Restaurant in
Lewisville.  Once there, Baccus then met
with Detective Davis inside and told him AIt=s here; it=s a go@ whereupon
Davis told Detective Scott to initiate the arrest.  Detective Davis stated Appellant remained
seated in the driver=s seat of
his vehicle while Minafee had exited and was standing near the vehicle.  Police arrested Appellant and Minafee.  Detective Davis testified approximately nine
ounces of cocaine were found rolled inside a newspaper on Minafee, in the
sleeve of his jacket.  No drugs were
found in Appellant=s possession
or in his vehicle, and it does not appear that any money exchanged hands at any
time.








The State also called
Detective Scott, who testified he had participated in the search and arrest of
Baccus and was present when Baccus offered to cooperate with the police and to
contact the person he identified as Appellant. He recalled that as a result of
the telephone call Baccus made, they were going to do a Abuy/bust@ operation
of about a quarter of a kilogram of cocaine in Lewisville on the Hooters
parking lot.  Detective Scott testified
his task was to maintain surveillance of Baccus and follow him to a location in
Dallas and then back to the Hooters restaurant in Lewisville.  Detective Scott testified that, at the gas
station, he observed Baccus meet with Appellant and another individual at the
gas pumps.  The other individual was
later identified as Horace Minafee. Detective Scott testified he was expecting
only Appellant at the gas station, not Minafee. 

Detective Scott stated the
individuals got back into their cars, and, as they began to leave, he saw
Baccus pull his car up next to the car driven by Appellant.  Detective Scott testified he Asaw a rolled-up newspaper pass from the open passenger window of the
Baccus vehicle to [Appellant].@  Detective Scott testified that
this confused him because, as he understood the plan, the Apackage@ would be
passing from Appellant=s vehicle to
Baccus=s vehicle.  He did not see
anything at the gas pumps to help him understand what he was observing.  Detective Scott did not know where any drugs
came from or where they went.  








Detective Scott stated he
called Detective Davis and the Dallas police to ask them to intercept Appellant=s vehicle, thinking that events were not proceeding as planned, but he
was satisfied when he saw Appellant=s vehicle follow the Baccus vehicle onto the northbound lane of I-35,
headed toward Lewisville.  He continued
to follow both vehicles some nineteen or twenty miles from the gas station to
the restaurant parking lot, where the police arrested Appellant and Minafee.  

According to Detective Scott,
he had observed Detective Davis search Baccus and recalled that Baccus=s vehicle had also been searched, although he did not say by whom,
before Baccus left to drive to the gas station. He maintained close contact
with Baccus=s vehicle as
he followed it, Baccus did not stop anywhere or contact anyone before arriving
at the gas station, and Appellant and Minafee were the only persons he saw in
the parking lot of the gas station  








The State also called Paul
Baccus to testify.  Baccus testified he
had known Appellant through Appellant=s uncle for about six months, his past dealings with Appellant
included buying and selling drugs, and he had bought drugs from Appellant
approximately thirty to fifty times. 
Baccus also testified he had known Minafee for about four months and
that Minafee was a drug addict who had bought drugs from Baccus and conducted Atransactions@ for
him.  Baccus stated that the week before
February 11, the date of the search of his residence, he had contacted
Appellant and told Appellant that somebody had contacted him about buying a Aquarter kilo of cocaine@ and that he would contact Appellant Aif the deal presented itself.@  

Baccus testified that, on
February 11 during the search at his residence, he asked Detective Davis if
there was anything he could do to avoid going to jail, and Davis began to ask
him about people he might know.  Baccus
stated that, as a result of his conversation with Detective Davis, he called
Appellant and told him he had been contacted by the people who wanted to buy
the Aquarter kilo of cocaine@ and all Appellant needed to do was arrange the transaction.  Baccus further stated Appellant told him he
would contact him when he had the narcotics in his possession and Appellant
contacted him later in the day with a plan for them to meet at a gas station in
Dallas, so he headed there.  Baccus
stated that when he arrived at the gas station, he saw Appellant and Minafee at
the gas pumps.  Baccus recalled that
Appellant and Minafee were in Appellant=s vehicle, a gray Oldsmobile. 
Baccus said he met with Appellant and Averified@ Appellant
had the cocaine.  Baccus described  the cocaine as packaged in newspaper and
stated he was able to look inside the newspaper and see the cocaine.  








Baccus testified Appellant
then gave him the cocaine as they were leaving, and he contacted Detective
Davis and told him that he was on his way to Lewisville with the drugs.  But Detective Davis did not want him to have
the cocaine in his possession, Baccus recalled; therefore, he flagged down
Appellant and returned the cocaine to him. 
Baccus further testified 
Appellant and Minafee followed him to the Hooters restaurant and they
were, in turn, all followed by Detective Scott. 
When they arrived at the restaurant, Baccus told Appellant he was going
inside to get the money.  When Baccus
went back outside, he was arrested along with Appellant, Minafee, and Detective
Davis, who was still undercover as ABig Louie.@ 

The defense called Horace
Minafee.  Minafee testified Baccus called
him on February 11 and asked him to come to Lewisville to do a drug
transaction.  According to Minafee, he
was supposed to pick up a package of cocaine from a Fina gas station and meet
Baccus at the Hooters restaurant in Lewisville. 
Minafee said he told Baccus he did not have a way to get there because
he did not have a working car but Baccus replied that he would call Appellant
and see if he would drive Minafee to the restaurant.  Minafee testified he then walked down his
street and met Appellant, who was driving toward him.  Minafee asked Appellant if Baccus had called
him about giving Minafee a ride to Lewisville, and Appellant replied that
Baccus had done so.  But, according to
Minafee, as far as he knew, Appellant did not know Minafee was doing a drug
transaction for Baccus.   








Minafee testified that, on
their way from Dallas to the Hooters in Lewisville, he told Appellant to pull
in at a Fina station because he needed some cigarettes.  Minafee stated he went over to an outside ice
machine, retrieved a package of drugs from behind it that had supposedly been
left there by Baccus, and placed the package in his jacket sleeve.  Minafee testified he and Appellant then left
the station and continued on to the restaurant but that he never told Appellant
about the drugs he had retrieved.  Police
arrested him and Appellant when they arrived at Hooters.  Minafee stated he was currently incarcerated
in the Denton County Jail, he was testifying because Appellant did not know
about the drug transaction, and he felt Appellant should not get in trouble for
what he, Minafee, had done.   








Minafee admitted he is a
crack addict and testified he was going to be paid $1,500 in money and drugs by
Baccus for picking up the package of cocaine and taking it to Baccus at the
Hooters for a sale.  Minafee testified
that he lived a block or two from Appellant and his wife, did chores for him
and cleaned his yard, had known Appellant about a year, and had never known
Appellant to sell drugs.  On
cross-examination, Minafee acknowledged that, although he knew that Appellant
had spoken with Baccus before Appellant picked Minafee up, he did not know what
Baccus told Appellant about why Minafee needed a ride.  Minafee denied he told police on the day he
was arrested that he had retrieved the cocaine from under a rock where it had
been hidden by a Cuban.  The State
recalled Detective Scott to impeach Minafee=s denial.  Detective Scott
testified that when he had interviewed Minafee after his arrest, Minafee told
him the cocaine was left under a rock in a vacant field by an unnamed Cuban. 

The jury charge included an
instruction on the law of parties and allowed the jury to convict Appellant if
they found beyond a reasonable doubt that Appellant committed the charged
offense either by his own conduct or Awith intent to promote or assist the commission of the offense of
possession with intent to deliver a controlled substance, . . . solicited,
encouraged, directed, aided, or attempted to aid Horace Minafee, Jr. in
committing the offense.@
Additionally, the trial court denied Appellant=s request for a lesser included charge of possession.  The jury found Appellant guilty.  Appellant pled true to an enhancement count,
and the jury assessed his punishment at sixty-five years= confinement and a $10,000 fine. 

                                             Discussion

Article 38.141 of the code of
criminal procedure, enacted effective September 1, 2001, provides that a
defendant may not be convicted on an informant=s testimony unless the testimony is corroborated:








(a) A
defendant may not be convicted of an offense under Chapter 481, Health and
Safety Code, on the testimony of a person who is not a licensed peace officer
or a special investigator but who is acting covertly on behalf of a law
enforcement agency or under the color of law enforcement unless the testimony
is corroborated by other evidence tending to connect the defendant with the
offense committed.

 

(b)
Corroboration is not sufficient for the purposes of this article if the
corroboration only shows the commission of the offense.

 

Tex. Code Crim. Proc.
Ann. art. 38.141 (Vernon 2005); see also Cantelon
v. State, 85 S.W.3d 457, 459-60 (Tex. App.CAustin 2002, no pet.). 

In interpreting article
38.141, courts have looked to article 38.14 of the code of criminal
procedure.  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  Article 38.14 was in existence long before
the enactment of article 38.141 and contains substantially the same language,
requiring corroboration of accomplice witness testimony by other evidence.  See Torres v. State, 137 S.W.3d 191,
195-96 (Tex. App.CHouston [1st
Dist.] 2004, no pet.); Young v. State, 95 S.W.3d 448, 451 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d); Cantelon, 85 S.W.3d at 459-60 (noting statutes
substantially the same and suggesting same purpose and same standard for
corroboration should apply).  








Article 38.14 applies to an
accomplice who, by definition, participated with the accused in the commission
of the charged offense and, therefore, would have a selfish incentive to
testify against the defendant to secure relief from prosecution or a lessened punishment.  Young, 95 S.W.3d at 451; Cantelon,
85 S.W.3d at 460.  The purpose of article
38.14 is to assure that a jury does not consider an accomplice witness=s testimony unless it finds that other evidence corroborates the
discredited witness=s
testimony.  Cantelon, 85 S.W.3d at
460; see also Young, 95 S.W.3d at 451 (citing Blake v. State, 971
S.W.2d 451, 454 (Tex. Crim. App. 1998)); McDuff v. State, 943 S.W.2d
517, 520 (Tex. App.CAustin 1997,
pet. ref=d).  The underlying premise is
that such a witness is a Adiscredited
witness@ and that Athe
testimony of an accomplice witness is to be carefully scrutinized not only
because of any interest he or she might have, but because her or his testimony
is evidence from a corrupt source.@  Beathard v. State, 767
S.W.2d 423, 429 (Tex. Crim. App. 1989) (quoting Paulus v. State, 633
S.W.2d 827, 843 (Tex. Crim. App. 1981)). 









Article 38.141 applies to
informants or covert witnesses who work with the police for self‑interested
reasons.  Cantelon, 85 S.W.3d at
460.  The informant generally has a
motive or hope for personal gain.  Id.  Often they work for compensation or to have
charges against them dismissed.  Id.  Reflecting the same legislative policy regarding
testimony of accomplices, because an informant could fall into the class of a
discredited witness with selfish interests and possibly corrupt motives, the
legislature has imposed the same standard of corroboration for an informant=s testimony.  Id.  Therefore, in applying the requirement for
corroboration of an informant=s testimony imposed by article 38.141, we assume that the legislature
was aware of case law interpreting the similar language of article 38.14, and
we look to case law regarding that statute. 
Young, 95 S.W.3d at 451; Cantelon, 85 S.W.3d at 460.

                                 Sufficiency
of Corroboration

In his first point, Appellant
argues that there was insufficient evidence to corroborate Baccus=s testimony.  It is well
established that a challenge of insufficient corroboration of an accomplice
witness=s testimony is not the same as a challenge of legally or factually
insufficient evidence to support the verdict. 
Cantelon, 85 S.W.3d at 460 (citing Cathey v. State, 992
S.W.2d 460, 462‑63 (Tex. Crim. App. 1999) (declining to impose legal and
factual sufficiency standards upon a review of accomplice witness testimony
under article 38.14)).  Likewise, legal
and factual sufficiency standards of review are not applicable to a review of
sufficiency of covert witness testimony under article 38.141.  Brown v. State, 159 S.W.3d 703, 711
(Tex. App.CTexarkana
2004, pet. ref=d), cert.
denied, 126 S. Ct. 485 (2005); see also Torres, 137 S.W.3d at
196.  The corroborating evidence
requirement is satisfied if there is some other evidence that tends to connect
the accused to the commission of the offense. 
Brown, 159 S.W.3d at 711; Torres, 137 S.W.3d at 196; Cantelon,
85 S.W.3d at 461.








To determine the sufficiency
of the corroborating evidence, we first eliminate the testimony of the covert
witness and ask whether other inculpatory evidence tends to connect the accused
to the commission of the offense, even if it does not directly link the accused
to the crime.  See Cantelon, 85
S.W.3d at 461 (citing McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim.
App. 1997)).  We must view the
corroborating evidence in the light most favorable to the verdict.  See id. (citing Knox v. State,
934 S.W.2d 678, 686‑87 (Tex. Crim. App. 1996)).  No precise rule can be formulated regarding
the amount of evidence required as corroboration of the testimony of a covert
witness;  each case must be judged on its
own facts.  Id.  The tends‑to‑connect standard
does not present a high threshold.  See
id. (citing In re C.M.G., 905 S.W.2d 56, 58 (Tex. App.CAustin 1995, no writ)). 








The corroborating evidence
does not, by itself, have to establish the guilt of the defendant beyond a
reasonable doubt, but it does have to tend to connect the defendant with the offense.  McDuff, 939 S.W.2d at 613; Brown, 159
S.W.3d at 711; Torres, 137 S.W.3d at 196.  Evidence that merely provides corroboration
of Adetails@ of the
accomplice=s testimony
is not sufficient if it does not corroborate a fact that tends to connect the
defendant to the offense.  Beathard, 767
S.W.2d at 428; Losada v. State, 721 S.W.2d 305, 308 (Tex. Crim. App.
1986).  The accused=s mere presence in the company of the informant before, during, and
after the commission of the offense is insufficient by itself as corroboration,
but evidence of such presence coupled with other Asuspicious circumstances@ may tend to connect the accused to the offense.  See Dowthitt v. State, 931 S.W.2d 244,
249 (Tex. Crim. App. 1996) (interpreting accomplice witness corroboration
requirement);  Brown, 159 S.W.3d
at 711; Torres, 137 S.W.3d at 196. 


Even apparently insignificant
incriminating circumstances may sometimes afford satisfactory evidence of
corroboration.  Brown, 159 S.W.3d
at 711; Jefferson v. State, 99 S.W.3d 790, 793 (Tex. App.CEastland 2003, pet. ref=d).  Cumulative evidence of
suspicious circumstances can be sufficient evidence that Atends to connect the accused to the alleged offense even if none of
the circumstances would be sufficient individually.@  Brown, 159 S.W.3d at
708; Cantelon, 85 S.W.3d at 460-61. 
AAll the law requires is that there be some [corroborating] evidence
from which rational jurors could conclude that this [other] evidence
sufficiently tended to connect Appellant to the offense.@  Jefferson, 99 S.W.3d at
793 (quoting Hernandez v. State, 939 S.W.2d 173, 179 (Tex. Crim. App.
1997)). 








When corroborating evidence
required for a conviction is lacking, the defendant will be entitled to a
verdict of acquittal.  Tex. Code Crim. Proc. Ann. art. 38.17
(Vernon 2005); see Ex parte Reynolds, 588 S.W.2d 900, 902  (Tex. Crim. App. 1979), cert. denied,
449 U.S. 920 (1980) (holding jury cannot return any verdict except acquittal
when evidence is insufficient to corroborate accomplice witness); Fare v.
State, 1 S.W.3d 928, 930 (Tex. App.CBeaumont 1999, pet. ref=d) (holding remedy for lack of sufficient corroborating evidence is
acquittal). 

In this case, article 38.141
applies.  The informant, Baccus, was
indisputably acting covertly on behalf of law enforcement.  He was cooperating in the hopes of completing
enough Acase credits@ to have his
charges dismissed.   Accordingly, to
determine the sufficiency of the corroboration of the informant, we must
eliminate all of his testimony and determine whether there is other evidence
that tends to connect Appellant to the offense of possession with intent to
deliver.  













In Cantelon, an officer testified that the informant met the
defendant at an agreed upon time and place, that he searched the informant, and
that he watched as the informant, carrying a specific amount of cash and an
audio recorder, met with the defendant and then returned without the cash,
carrying a bag of marijuana and an audiotape recording of the drug transaction,
on which the defendant=s voice was
identified.  85 S.W.3d at 462.  In addition, a videotape recording was made
of the informant=s actions as
he entered the defendant=s car.  Id.  This
evidence was held to sufficiently connect the defendant with the crime.  Id. 
Likewise, in Jefferson, an officer testified that he searched the
informant, placed an audio recording device on her and turned it on, observed
the informant enter a house to make a drug transaction, turned the device off
when she returned and introduced the recording into evidence and identified the
defendant=s voice on
the recording.  This evidence was held
sufficient to corroborate the informant=s testimony.  99 S.W.3d at 792; see
also Brown, 159 S.W.3d at 708-11 (holding informant=s testimony corroborated by evidence consisting of defendant=s presence at scene coupled with cash found in his pocket carrying
serial numbers matching those provided to informant for controlled buy, and
videotape of transaction included conversation of defendant regarding prior
drug sale); Dennis v. State, 151 S.W.3d 745, 749 (Tex. App.CAmarillo 2004, pet. ref=d) (holding testimony of officer and narcotics investigator who both
witnessed drug transaction, coupled with audio recording of transaction,
constituted sufficient corroboration); Tave v. State, No. 2-02-449-CR,
2004 WL 1175283, at *2 (Tex. App.CFort Worth May 27, 2004, pet. ref=d) (not designated for publication) (holding informant=s testimony of actual transfer of a controlled substance sufficiently
corroborated by testimony of DEA agents that informant was given $150 to make
controlled buy and by video recording made by informant that showed him buying
two $50 Arocks@ from
defendant); Leal v. State, No. 05‑03‑00281‑CR, 2004 WL
1119732, at *2 (Tex. App.CDallas May
20, 2004, pet. ref=d) (not
designated for publication) (holding officer=s identification of defendant=s voice on tape recording of phone call setting up controlled buy
sufficient to corroborate informant=s testimony regarding subsequent buy); Woods v. State, No. 12‑02‑00296‑CR,
2004 WL 1109893, at *2 (Tex. App.CTyler May 12, 2004, no pet.) (not designated for publication) (holding
corroborating evidence sufficient that officer drove informant to defendant=s house, saw defendant admit informant, and saw informant come out
with drugs, and defendant=s voice was
identified on audio tape of transaction).   









In contrast, in Young v.
State, the First Court of Appeals held the corroboration of an informant=s testimony to be insufficient. 
95 S.W.3d 448, 452 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).  In Young, an
informant named Farr agreed to help a narcotics task force apprehend Young, who
was an alleged cocaine dealer.  Id.
at 449.  Police searched Farr and his
vehicle before giving him $600 and an audio recorder to make a controlled
buy.  Id. at 450.  A police officer followed Farr, but the
officer did not follow him all the way to the house where he was supposed to be
going, and it was unclear how much distance separated the officer from
Farr.  Id.  Farr returned with over nineteen grams of
cocaine and identified Young as the one who sold him the cocaine.  Id. 
Farr identified a photograph of Young=s house as the location of the cocaine transaction and identified
Young=s voice on the audio tape; however, no one else identified Young=s voice on the tape.  Id.


The State argued in Young
that the photograph and Young=s voice on the recorder were sufficient to connect him to the offense,
but the court of appeals disagreed.  Id.
at 451.  The court determined that the
photograph of Young=s house
simply did not connect him to a cocaine transaction, and the State offered no
other evidence that linked his house to a cocaine transaction.  Id. 
No other witnesses testified that Farr entered Young=s house or that a cocaine transaction took place there.  Id. at 452.  As for the tape recording, the court
concluded that without Farr=s testimony to identify Young=s voice, there was nothing to connect him to the voices on the tape,
and the tape showed nothing more than the Acommission of an offense.@  Id. (citing Tex. Code Crim. Proc. Ann. art.
38.141).  Noting that no other evidence
in the record tended to connect Young to the offense, the court held the
evidence to be legally insufficient to support the conviction and rendered a
judgment of acquittal.  Id.;  see also Williams v. State, 864
S.W.2d 81, 83 (Tex. App.CTyler 1993,
pet. ref=d) (holding evidence that police officer drove informant to location
and waited outside while transaction occurred insufficient to corroborate
informant=s
identification of defendant as person from whom he purchased drugs).  








When we eliminate Baccus=s testimony, we are left with the testimony of Detectives Davis and
Scott.  The State argues that those
officers= testimony establishes that Baccus called Appellant to set up the Abuy@ at
Hooters.  We disagree.  The officers heard only Baccus=s side of the conversation. 
Detective Davis testified that he Aunderstood@ Baccus was
speaking with Appellant but did not explain how he arrived at that
understanding.  No proof was introduced
that Baccus even called or actually spoke with Appellant.  There was no testimony as to the purpose of a
meeting in Dallas or why the transaction described by Detective Scott took
place at the gas station in Dallas when the Abuy/bust@ was to take
place at Hooters in Lewisville. 
Moreover, Detective Davis did not see what occurred at the gas station
in Dallas because he was at the restaurant in Lewisville arranging the arrest
team.  Davis and Scott acknowledged that
the drugs were found rolled up in a newspaper on Minafee.  No drugs were found on Appellant or inside
his vehicle. 








The State argues that Baccus=s testimony is corroborated by Detective Scott=s testimony that he saw a meeting between Baccus, Appellant, and
Minafee at the gas station and saw Baccus Apass the drugs@ to
Appellant.  But the only exchange that
Detective Scott observed during this meeting was a rolled-up newspaper passing
from the open passenger window of the Baccus vehicle to that of Appellant as
the two vehicles were about to leave the gas station.  Detective Scott did not see what was in the
newspaper, did not know where the newspaper came from, and was Aconfused@ as to why
it was being passed by Baccus to Appellant, rather than from Appellant to
Baccus.  The only person to testify as to
why this occurred or as to what was inside the newspaper at the gas station was
Baccus.








Thus, when we exclude Baccus=s testimony from consideration, we are left with direct evidence that
Appellant, accompanied by Minafee, was present at a meeting at a gas station in
Dallas with Baccus, that Baccus handed Appellant a rolled-up newspaper later
found to contain cocaine, and that Appellant, accompanied by Minafee, followed
Baccus=s car to the Hooters restaurant in Lewisville.  However, the Detectives= testimony provided the following additional circumstances: (1) they
were present and heard Baccus call someone on the telephone and set up a
transaction for a buy of a quarter of a kilogram of cocaine by ABig Louie@ at an
agreed place, the Hooters restaurant in Lewisville; (2) Detective Scott saw
Appellant driving a gray Oldsmobile, accompanied by a second male, Minafee,
meeting with Baccus at a gas station in Dallas, tending to corroborate
Detective Scott=s Aexpectation@ that Baccus
would meet Appellant there, driving a gray Oldsmobile; (3) Detectives Davis and
Scott testified that Baccus, as well as Baccus=s car, had been searched and that he had no drugs when he left his
home to drive to the gas station in Dallas; nor did they observe him meet with
anyone other than Appellant and Minafee; (4) after seeing the meeting at the
gas station, and although Aconfused@ about what
he saw, Detective Scott saw Baccus at the gas station holding a rolled-up
newspaper later found to contain nine ounces of cocaine; (5) Detective Scott
saw Baccus pass the rolled-up newspaper to Appellant in the parking lot of the
gas station, which is at least consistent with Baccus=s testimony explaining that he gave the drugs to Appellant at the gas
station because Detective Davis told him he did not want the drugs to be in
Baccus=s possession; (6) Appellant was apprehended in the Hooters parking
lot, establishing Appellant=s presence at the scene of the planned Abuy@; and (7)
upon the arrest of Appellant and Minafee, approximately nine ounces of cocaine
were found inside the rolled-up newspaper on Minafee, as described by
Baccus.  








Viewed in the light most
favorable to the verdict, and when coupled with the undisputed evidence that
the cocaine was found in the rolled-up newspaper and that Appellant was present
both for the meeting with Baccus at the gas station and at the scene of the
planned Abuy,@ rational
jurors could conclude that the cumulative suspicious circumstances tended to
connect Appellant to the offense.  We
therefore hold that there was some other evidence tending to connect Appellant
to the offense, satisfying the corroboration requirement of article 38.141 in order
for the jury to be able to consider Baccus=s testimony as evidence of guilt. 
See Tex. Code Crim. Proc.
Ann. art. 38.141.  We overrule Appellant=s first point.  It is,
therefore, unnecessary to address Appellant=s second point, that the evidence was legally insufficient to support
his conviction if Baccus=s testimony
is excluded from consideration.  See
Tex. R. App. P. 47.1. 

                                     Failure to Instruct Jury








In his third point, Appellant
argues that the trial court erred by failing to instruct the jury that a
confidential informant=s testimony
must be corroborated, in conformity with article 38.141.  We agree. 
Our holding that there was some Aother evidence@ to satisfy
the statutory corroboration requirement does not eliminate the need for an
instruction.  See  Saunders v. State, 817 S.W.2d 688, 690
(Tex. Crim. App. 1991) (noting court Amight disagree@ with court
of appeals=s holding
that there was no evidence tending to connect defendant to offense, but failure
to instruct jury in accordance with corroboration requirement for accomplice
witness testimony was nevertheless harmful error).  When the State elicits testimony from an
accomplice for the purpose of proving a defendant=s guilt, the defendant is entitled to an instruction that a conviction
cannot be based on the accomplice testimony unless the jury believes the
testimony to be true, and unless there is other evidence tending to connect the
defendant to the offense.  Green v.
State, 72 S.W.3d 420, 423 (Tex. App.CTexarkana 2002, pet. ref=d) (citing Selman v. State, 817 S.W.2d 310, 311 (Tex. Crim.
App. 1991)).  This rule serves the
legislative policy reflected by article 38.14 that such testimony implicating
another person should be viewed with caution, considering the incentives to lie
in order to avoid punishment or to shift blame to another person.  Id. (citing Blake v. State, 971
S.W.2d 451, 454 (Tex. Crim. App. 1998)); Cantelon, 85 S.W.3d at 460
(noting same policy served by article 38.141 regarding informants); see
Burton v. State, 442 S.W.2d 354, 357 (Tex. Crim. App. 1969) (approving
instruction). 

        When the State relies upon testimony that
is required by statute to be corroborated, it is error for the trial court not
to instruct the jury that the defendant cannot be convicted on such
testimony unless there is other evidence tending to connect the defendant with
the offense and that evidence showing only the commission of the offense is
insufficient.  See, e.g., Herron v.
State, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (holding failure to
instruct jury as to requirement of corroboration of accomplice witness
testimony was error); Saunders, 817 S.W.2d at 690 (same); Jefferson,
99 S.W.3d at 793 (holding failure to instruct jury on requirement of
corroboration of informant=s testimony is error).








Appellant concedes that  no objection was made to the trial court=s failure to charge the jury on the requirements of article 38.141
here, but asserts that the trial court=s error resulted in harm under the Aegregious harm standard@ of Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (applying egregious harm analysis to unobjected-to charge error).  See Herron, 86 S.W.3d at 632 (holding
egregious harm standard applied where appellant failed to object to lack of
instruction on accomplice witness testimony); Saunders, 817 S.W.2d at
692 (holding egregious harm standard applied because instruction constitutes Alaw applicable to the case@); Jefferson, 99 S.W.3d at 793 (applying egregious harm
standard when defendant failed to object to lack of article 38.141 instruction
regarding informant=s
testimony).

Under the Aegregious harm standard,@ the omission of a corroborating-evidence instruction may be rendered
harmless if other evidence than the testimony of the accomplice witness or
informant does exist that fulfills the purpose of the instruction.  See Herron, 86 S.W.3d at 632.  This is said to be so because the instruction
merely informs the jury that it cannot use the testimony of the accomplice or
the informant unless it is first determined that other evidence exists connecting
the defendant to the offense.  Id.  Once it is determined that such other
evidence exists, the purpose of the instruction may have been fulfilled.  Id. 
But this is not always true.  








A harm analysis for error in
omitting the cautionary instruction on the requirement of corroborating
evidence must be Aflexible,@ taking into consideration both the existence and the strength of such
other evidence.  Id.   In determining the strength of corroborating
evidence, we are instructed that we must examine (1) its reliability or
believability and (2) the strength of its tendency to connect the defendant to
the offense.  Id.  Under the Aegregious harm@ analysis,
omission of the instruction to the jury on the requirement of corroborating
evidence will generally be harmless Aunless the corroborating [ ] evidence is >so unconvincing in fact as to render the State=s overall case for conviction clearly and significantly less
persuasive.=@  Id.; Saunders, 817
S.W.2d at 689.








In Saunders, involving
arson and criminal conspiracy, the court of criminal appeals found harm under
the egregious harm analysis in failing to submit the jury instruction requiring
corroboration of an accomplice witness where the corroborating non-accomplice
testimony was weak and was contradicted by other evidence.  817 S.W.2d at 689.  There was evidence of suspicious financial
circumstances including that the structure had recently been insured for more
than its replacement cost, the insured had recently consolidated several loans
into a very large note to his bank, items of value had been removed from the
structure shortly before the fire, and the insured had twice before had claims
for losses in his business.  Id.
at 691.  However, other evidence was
undisputed that the house was worth more than its replacement cost, the nature
of the defendant=s business
typically required large loans to finance his operation, his business before
the fire had been profitable, the bank was not concerned as to his solvency,
and the previous claims were not unusual in the defendant=s business.  Id. at
691-92.  The remaining evidence was
described by the court as a Arather weak inference@ that the defendant contrived to impede the investigation by destroying
evidence and that he saved items of personal property by storing them
elsewhere, but the court noted that this evidence was conflicting and the
inculpatory inferences from it were weak. 
Id. at 692.  Thus, the
court held, egregious harm had been shown because rational jurors would have
found the State=s case Asignificantly less persuasive had they been told that [the accomplice=s] testimony could not be accepted without corroboration.@  Id.  Notably, the court stated, ARational jurors may not utterly disregard undisputed evidence without
a sensible basis for thinking it unreliable any more than they may simply
assume a critical part of the proof without evidence having an inclination to
confirm it.@  Id.      








In this case, critical proof
is lacking when Baccus=s testimony
is set aside.  There is no testimony that
either officer verified that Baccus was in fact speaking with Appellant on the
telephone to set up the Abuy@ at the Hooters restaurant.  No
audio or video was made of the transactions described by Baccus in which he
said he verified that Appellant had the drugs inside the newspaper or that
Appellant gave the package to him at the gas station. The jury would have had
to assume these critical facts without evidence tending to confirm them, which
the jury could not do.  Saunders,
817 S.W.2d at 692. What Detective Scott testified he observed was not delivery
by Appellant of drugs to Baccus at the gas station, but the exact opposite, a
package passed by Baccus to Appellant. 
There was no evidence of any agreement for price nor of any exchange of
money.  The drugs later found inside the
newspaper were found on Minafee, not Appellant. 
And Detective Scott, who had maintained surveillance on Baccus from his
residence in Lewisville to the gas station in Dallas and back to the Hooters in
Lewisville, agreed he could only speculate as to how the cocaine wound up in
Minafee=s sleeve.  Finally, no one other
than Baccus testified that Appellant was ever aware of the presence of the
cocaine inside the rolled-up newspaper or that Appellant initially possesed and
delivered the package to Baccus at the gas station. 








The State argues that what
Baccus said would happen is what happened, thus circumstantially corroborating
his testimony.  We cannot agree.  While there was an agreed upon place for the
drugs to be transferred to BaccusCthe Hooters restaurant in LewisvilleCthat is not what happened. 
The transfer of the package was the wrong way, from Baccus to Appellant,
and at the wrong place, a gas station some twenty miles away in Dallas.  Additionally, Baccus=s version of the facts was directly contradicted by Minafee=s testimony that Baccus had called him, not Appellant, to do the
transaction, that heCnot
AppellantCwas
instructed to make the delivery to the Hooters in Lewisville, and that
Appellant knew nothing of the drugs.  








Minafee, the drug addict, had
little credibility but apparently nothing to gain by his testimony since he had
already pleaded guilty and received a twenty-five-year sentence for his
participation in the offense.  On the
other hand, the State offered no evidence indicating that Baccus=s testimony was either credible or reliable.  And Baccus, the drug dealer who had been
caught and had agreed to be the covert witness, had much to gain by inculpating
Appellant.  Indeed, the jury could have
concluded from the evidence including Minafee=s testimony that Baccus used Minafee as his minion to set up Appellant
for a take-down in an effort to earn his first Acredit.@  Mindful of Baccus=s admittedly strong incentive to avoid prison by helping to catch Asources@ for the
police, and absent critical evidence from which they could infer that Appellant
ever knew of the drugs or the planned Abuy,@ we believe
rational jurors would have found the State=s case Asignificantly
less persuasive@ had they
been properly instructed that they could not accept Baccus=s testimony without corroboration by other evidence tending to connect
Appellant to the offense of possession with intent to deliver, either as a
principal or a party.  Under these
circumstances, we conclude that the trial court=s failure to give a corroborating-evidence instruction to the jury
under article 38.141 was critical to the outcome and effectively denied
Appellant a fair trial, resulting in egregious harm.  We sustain Appellant=s third point. 

                                             Conclusion

Having overruled Appellant=s first point but having sustained Appellant=s third point that harmful error resulted from the failure of the
trial court to give the jury the corroborating-evidence instruction, we reverse
the trial court=s judgment
and remand for new trial.  Because of our
disposition, we need not reach Appellant=s second point, in which he argues that the evidence is legally
insufficient if Baccus=s testimony
is excluded, and his fourth point, in which he complains of punishment-phase
charge error.  See Tex. R. App. P. 47.1.

 

 

 

ANNE GARDNER

JUSTICE

 

PANEL F:    CAYCE, C.J.; GARDNER and MCCOY, JJ.

 

PUBLISH

 

DELIVERED:  September 21, 2006