**Prince BROWN, jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–04–00046–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Aug. 16, 2004.

Decided Dec. 14, 2004.

Rehearing Overruled Jan. 4, 2005.

Discretionary Review Refused June 15, 2005.

William T. Hughey, Law Office of William T. Hughey, Marshall, for appellant.

Al Davis, Asst. Dist. Atty., Joe Black, Harrison Co. Dist. Atty., Marshall, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Prince Brown, Jr., appeals from his conviction by a jury for two counts of delivery of a controlled substance, cocaine, in an amount of more than one but less than four grams. Brown pled true to the enhancement paragraphs, and the jury assessed his punishment at forty years' imprisonment. Brown contends the evidence is legally insufficient because the testimony of the informant working for the police was not sufficiently corroborated and because of a variance between the indictment and the proof at trial. Brown also contends the trial court erred in denying a mistrial based on the difference between the videotape used at trial and the videotape provided to him in discovery. We overrule these contentions and affirm the judgment.

**Factual Background**

The State's evidence showed that, on February 26, 2003, Brown sold Timothy Taylor, who was acting covertly on behalf of the Marshall Police Department, approximately 1.05 grams of crack cocaine. Taylor originally began working for the Marshall Police Department in order to avoid convictions for certain criminal charges pending against him, but at some point became a paid employee of the police department. Around 4:43 p.m., Taylor left a location near Taylor's house where he had met with Lieutenant Joe Arledge and two other officers, and where he had been equipped with video surveillance equipment. The police officers had provided the vehicle used by Taylor and had searched both the vehicle and Taylor before he left. Taylor was observed at 4:47 p.m., by a "loose rolling surveillance" being conducted by the police, in the vicinity of Brown's residence. At 4:51 p.m., Taylor was observed leaving Brown's residence, and he arrived at a second predetermined location at 4:54 p.m. Taylor provided the police with a bag containing 1.05 grams of crack cocaine and testified Brown had sold him the cocaine. The videotape of the transaction did not record the actual transfer of the cocaine.

On March 5, 2003, Brown sold Taylor approximately 1.48 grams of crack cocaine. Similar to the prior transaction, Taylor met Arledge and two other officers at a predetermined location and was equipped with video surveillance equipment, as well as $150.00 for the purchase of the cocaine. While Taylor used his own vehicle for this transaction, Arledge testified the police searched both Taylor and the vehicle before Taylor left the location. Taylor left the officers at 2:21 p.m. and was observed arriving at Brown's residence at 2:26 p.m. Taylor was observed leaving Brown's residence at 2:39 p.m. and arrived at another predetermined location at 2:41 p.m. Taylor provided the officers with a bag containing approximately 1.48 grams of crack cocaine and testified Brown had sold him the co-

caine. As before, the videotape did not reveal the actual transaction, but it did record the following conversation:

[Brown]: What you need?

[Taylor]: The same thing.

[Brown]: What did you get from me the other day?

[Taylor]: 1, 5, 0.

When arrested the next day, Brown had possession of $60.00 of the $150.00 which Taylor used to buy the drugs. The police had photocopied the money provided to Taylor and three $20.00 bills found in Brown's possession had matching serial numbers. This money had been provided to Taylor by the police for the transaction on March 5. Arledge testified he had photographed the money before he provided it to Taylor. No money from the prior transaction was discovered.

**The Testimony of the Covert Witness was Corroborated**

In his first point of error, Brown contends the evidence is legally insufficient to corroborate Taylor's testimony. According to Brown, the State only placed him at the scene of the offense, and the evidence, without the covert witness testimony, does not tend to connect him to the offense.

Article 38.141 of the Code of Criminal Procedure requires that testimony of a person who is not a licensed police officer or special investigator, but who is acting covertly on behalf of the police, be corroborated by other evidence tending to connect the accused to the offense. Tex.Code Crim. Proc. Ann. art. 38.141 (Vernon Supp. 2004–2005). Article 38.141 provides:

(a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

Tex.Code Crim. Proc. Ann. art. 38.141(a), (b). Similar to the concerns raised by accomplice witness testimony, covert witnesses may have incentives to lie or shade their testimony in favor of the state, which requires such testimony to be viewed with a measure of caution. *Young v. State*, 95 S.W.3d 448, 451 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

■ Because the language of Article 38.141 is identical to Article 38.14, which requires corroboration of accomplice witness testimony, other courts of appeals have adopted the standards for accomplice witness testimony in applying Article 38.141. *See Torres v. State*, 137 S.W.3d 191, 196 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Jefferson v. State*, 99 S.W.3d 790, 793 (Tex.App.-Eastland 2003, pet. ref'd); *Young*, 95 S.W.3d at 451; *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.-Austin 2002, no pet.). We agree that the interpretations of Article 38.14 relating to accomplice witness testimony are persuasive and applicable to Article 38.141.

■ Legal and factual sufficiency standards of review are not applicable to a review of covert witness testimony under Article 38.141, because corroboration of the covert witness testimony is a statutory requirement imposed by the Texas Legislature. *Torres*, 137 S.W.3d at 196; *Cantelon*, 85 S.W.3d at 460; *see Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999) (accomplice witness testimony). The covert witness rule only requires that there is *some* other evidence which *tends* to con-

nect the accused to the commission of the offense alleged in the indictment. *Torres,* 137 S.W.3d at 196; *see Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim.App.1997).

In determining whether there is "other evidence" which tends to connect the accused with the offense, we must eliminate all covert witness testimony and determine whether the remaining inculpatory facts and circumstances tend to connect the appellant to the offense. *Torres,* 137 S.W.3d at 196; *Young,* 95 S.W.3d at 451; *Cantelon,* 85 S.W.3d at 461. In our analysis of whether there is sufficient corroboration, we will eliminate from consideration all of Taylor's testimony. Article 38.141 will be satisfied if there was some other evidence that tended to connect Brown with the cocaine transactions.

Brown's presence at the scene of the crime was clearly established in both transactions. Taylor's cars were searched before both transactions, a surveillance was conducted following Taylor's movements on both days, and both videotapes recorded the presence of Brown at Brown's residence. However, Brown's presence alone is not enough to corroborate the accomplice testimony. Mere presence of a defendant at the scene of the crime is insufficient to corroborate accomplice testimony. *Torres,* 137 S.W.3d at 196. However, proof that the accused was at or near the scene of the crime at or about the time of its commission, coupled with other suspicious circumstances, may be sufficient to tend to connect the accused to the crime. *Id.; see Brown v. State,* 672 S.W.2d 487, 489 (Tex.Crim.App.1984). Even apparently insignificant incriminating suspicious circumstances may sometimes prove to be sufficient corroboration. *Torres,* 137 S.W.3d at 196; *Cantelon,* 85 S.W.3d at 461; *see Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Crim.App.1993). Cumulative evidence of "suspicious circum-

stances" can be sufficient evidence which "tends to connect" a defendant to the alleged offense, even if none of the circumstances would be sufficient individually. *Cantelon,* 85 S.W.3d at 460–61. We will examine the other evidence that tends to connect Brown to each offense in turn.

The State introduced sufficient "suspicious circumstances" tending to connect Brown to the March 5 transaction. Three $20.00 bills found in Brown's possession had matching serial numbers with the money photocopied by the police. Arledge testified he had photocopied the money before he provided it to Taylor. The videotape of the March 5 transaction recorded the following conversation:

[Brown]: What you need?

[Taylor]: The same thing.

[Brown]: What did you get from me the other day?

[Taylor]: 1, 5, 0.

The money and the above conversation, when combined with Brown's presence at the scene, are sufficient to tend to connect Brown to the offense.

Brown argues that the evidence of suspicious circumstances is insufficient to tend to connect him to the February 26 transaction. While Brown's presence was established at the scene of the offense, none of the money, which had previously been photocopied, provided to Taylor to purchase cocaine, was found in Brown's possession. As discussed above, the videotape of the March 5 transaction recorded Brown asking Taylor what he wanted and asking what he had gotten "the other day." While a date is not specified identifying the "other day," the fact Brown had provided "the same thing" to Taylor previously is a suspicious circumstance. In addition, the videotape of the February 26 transaction records Brown entering the house, after a brief conversation with Tay-

lor, and then exiting with something in his (Brown's) hand. The combined effect of Brown's presence at the scene and the suspicious circumstances, including the conversation during the March 5 transaction and the fact Brown entered his residence and returned with something in his hand, is sufficient to corroborate the covert witness' testimony.

In *Young*, the First District Court of Appeals held that the corroboration of a covert witness' testimony was insufficient because the only evidence linking the defendant to the offense was the covert witness' identification of the defendant's voice on an audiotape. *Young*, 95 S.W.3d at 452. The court noted that, without the informant's testimony, the accused was not linked to the audiotape, which was the only noninformant testimony linking Young to the crime. *Id.* This case is distinguishable from *Young* because the police officers, who conducted a surveillance of Taylor's travels, observed Taylor's vehicle at Brown's residence and because the recording of the transaction included a videotape recording rather than just an audiotape recording.

We conclude that sufficient corroboration of the covert witness testimony exists. The State introduced sufficient evidence to corroborate both the February 26 and March 5 transactions. We overrule Brown's first point of error.

**The Variance Was Immaterial**

■ Brown contends, in his second point of error, that the evidence is legally insufficient because of a variance between the indictment and the proof at trial. The indictment specified Brown sold the cocaine to "T. Taylor," while the proof at trial established that the undercover officer was "Timothy Taylor." As Brown correctly acknowledges, the State is permitted under Article 21.07 of the Code of Criminal Procedure to indict using one or more of the initials of a person's given name. TEX.CODE CRIM. PROC. ANN. art. 21.07 (Vernon Supp.2004–2005). Brown argues, though, that the State is obliged to connect the initial and the actual name at trial. Because the State did not prove Timothy Taylor was the same person as "T. Taylor" in the indictment, a variance existed between the indictment and the evidence at trial.

■ "A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex.Crim.App.2001). Only a material variance requires reversal. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex.Crim.App.2002). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Gollihar*, 46 S.W.3d at 247–48; *see Stevens v. State*, 891 S.W.2d 649, 650 (Tex. Crim.App.1995); *see also Rojas v. State*, 986 S.W.2d 241, 246 (Tex.Crim.App.1998). The defendant has the burden of demonstrating surprise or prejudice. *Santana v. State*, 59 S.W.3d 187, 194 (Tex.Crim.App. 2001). In order to determine whether a defendant's "substantial rights" have been prejudiced, we must consider two questions: whether the indictment, as written, informed the defendant of the charge against him or her sufficiently to allow such defendant to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Gollihar*, 46 S.W.3d at 248 (citing *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir.2000)).

In *Fuller*, the Texas Court of Criminal Appeals held that a variance between an

indictment that alleged that the victim was "Olen M. Fuller" and the evidence at trial which referred to the victim as "Mr. Fuller" or as "Buddy" was an immaterial variance. *Fuller*, 73 S.W.3d at 254. Similar to *Fuller*, the variance in this case does not involve a statutory element of the offense and there is no showing that Brown was surprised or prejudiced by the variance. The indictment, as written, sufficiently informed Brown of the charge against him and the variance would not subject Brown to another prosecution for the same offense. The variance is immaterial.

### Legally Sufficient Evidence Exists

In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.1991).

■ Evidence sufficiency should be measured against a "hypothetically correct" jury charge. *See Gollihar*, 46 S.W.3d at 253; *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997). A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The " 'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim.App.2000).

The "hypothetically correct" jury charge cannot "wholly re-write the indictment," but is not required to "track exactly all of the allegations in the indictment." *Gollihar*, 46 S.W.3d at 253.

■ The hypothetically correct jury charge in this case would have required the jury to find that Brown knowingly delivered the controlled substance to Timothy Taylor rather than T. Taylor. Taylor testified Brown sold him the substances provided to the police. As discussed above, Taylor's testimony was sufficiently corroborated. Ruben Rendon, a criminalist with the Texas Department of Public Safety, testified the substance provided to the police by Taylor on both occasions was cocaine. The cocaine, including some adulterants and dilutants, purchased by Taylor February 26 weighed 1.05 grams, and the cocaine purchased March 5 weighed 1.48 grams. Viewed in a light most favorable to the prosecution, a rational juror could have found Brown guilty of both offenses beyond a reasonable doubt. Because the variance is immaterial and the evidence is legally sufficient, we overrule Brown's second point of error.

### The Trial Court Did Not Err in Denying the Mistrial

■ In his last point of error, Brown contends the trial court erred in denying his motion for a mistrial because of the difference between the videotape provided to the defense before trial and the videotape admitted into evidence. On the copy of the videotape provided to the defense, the audio was not intelligible. However, on the videotape introduced at trial, the audio could be understood. The State claimed the audio on all copies made at the same time the defense's copy was made was not as intelligible as the original videotape. The State alleged it did not discover the audio could be understood better on

the original until shortly before trial and asserted the originals had been available for the defense to examine. The State argues Brown failed to preserve error.

■ To preserve error, an objection must be "timely, specific, pursued to an adverse ruling, and, with two exceptions, contemporaneous—that is, made each time inadmissible evidence is offered. . . ." *Geuder v. State*, 115 S.W.3d 11, 13 (Tex.Crim. App.2003) (discussing one exception, where evidence is heard outside jury's presence to determine admissibility); *see Broderick v. State*, 35 S.W.3d 67, 76 (Tex.App.-Texarkana 2000, pet. ref'd). The objection must be made at the earliest possible opportunity. *Marini v. State*, 593 S.W.2d 709, 714 (Tex.Crim.App. [Panel Op.] 1980); *In re G.A.T.*, 16 S.W.3d 818, 828 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *see Stults v. State*, 23 S.W.3d 198, 205–06 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

■ When the videotape was offered into evidence, Brown's counsel stated he had no objection. The State contends this statement waived any error. However, an objection is not required until the basis of relief becomes apparent. *Johnson v. State*, 878 S.W.2d 164, 167 (Tex.Crim.App. 1994); *see Crane v. State*, 786 S.W.2d 338, 348 (Tex.Crim.App.1990); *Thornton v. State*, 994 S.W.2d 845, 852 (Tex.App.-Fort Worth 1999, pet. ref'd); *Morgan v. State*, 816 S.W.2d 98, 102 (Tex.App.-Waco), *pet. ref'd*, 817 S.W.2d 706 (Tex.Crim.App.1991). The defense may not have been aware of the difference in the videotape when the State introduced that videotape into evidence.[1]

While the difference between the videotape provided to the defense and the videotape admitted into evidence may not have been apparent at the time of admission, the difference would have been apparent as soon as the videotape was played. After the basis for relief became apparent, the defense failed to make a timely objection. Taylor provided a play-by-play commentary while the videotape was played before the jury. Taylor was then cross-examined, Rendon provided lengthy testimony concerning the tests he performed identifying the substance as cocaine, the State rested, and the jury was dismissed for lunch before the defense made any objection to the videotape. Because Brown did not make a timely objection as soon as the basis for relief became apparent, he did not preserve error for appellate review. We overrule his last point of error.

## Conclusion

The testimony of the covert witness was sufficiently corroborated by other evidence that tended to connect Brown to the offense. The variance between the indictment and the evidence at trial was immaterial, and legally sufficient evidence exists to support the jury's verdict. Error was not preserved concerning the difference between the videotape provided to the defense before trial and the videotape admitted into evidence.

We affirm the judgment.

---

1. We note that the State asserted the prosecutor and defense counsel had discussed the matter earlier. However, there is no evidence Brown's counsel had viewed the original before trial. The defense may not have been aware of the extent the audio portion of the videotape tended to incriminate Brown. The effect of the difference may not have been apparent at the time the videotape was introduced.