In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-407 CR


____________________



PAUL AUTHOR YORK, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 05-03-02592 CR







MEMORANDUM OPINION

 A jury convicted Paul Author York of delivery of a controlled substance. See Tex.
Health & Safety Code Ann. § 481.112(c) (Vernon 2003). York challenges the legal
sufficiency of the evidence supporting the conviction and contends the trial court committed
fundamental error in failing to instruct the jury pursuant to article 38.141 of the Texas Code
of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005). 

 Don Likens, narcotics detective with the Montgomery County Sheriff's Department
Special Investigations Unit, testified the Conroe Police Department contacted him about
working with a confidential informant who had provided information on a location where she
could purchase crack cocaine in Willis, Texas. Likens planned the operation and chose
Elizabeth Morris, also a detective with the Montgomery County Sheriff's Department Special
Investigations Unit, to accompany the confidential informant to the location. Likens was
familiar with the location where the "buy" operation was to take place. He had received
information on that location for two years. He was aware of the informant's previous history
of assaults and assumed she had been involved in drug activity. He had used the informant
in prior operations, believed her to be credible, and had no information that the informant
was trying to "frame" York.

 Detective Likens gave Detective Morris a recording device. Detective Morris gave
the recording device to the informant, who placed it in her purse. Detective Morris drove the
informant to the location and Detective Likens followed them. Once he saw Detective
Morris turn into the driveway, Likens pulled off to the side of the road. Detective Likens'
vehicle was equipped with an audio receiving device that allowed him to hear the transaction
through the informant's recording device.

 After the purchase, Detective Morris drove the informant to a separate location to
meet Likens. The informant turned over the tape recording and Detective Likens placed it
in a bag and marked the bag with the case number, date, and time. Detective Likens weighed
and field-tested the controlled substance the informant purchased; the weight was 1.1 grams. 
He sealed the controlled substance in an envelope and hand-delivered it to the Montgomery
County lab for processing. 

 Detective Likens conceded no officer witnessed the drug transaction and the audiotape
is not of the best quality. When asked whether he was able to identify York's voice on the
tape, he responded that "I have personally spoken with Paul York and it sounds to me as if
it is the same individual, yes, sir." 

 Detective Morris testified that prior to driving the informant to the location of the
undercover operation, she searched the informant in order to confirm the informant did not
have any drugs or money separate from the money law enforcement supplied for the purchase
of drugs. She made sure the audio device provided by Detective Likens was working and
she recorded preliminary information about the operation on the tape. The informant put the
recording device in her purse. Detective Morris drove the informant in an undercover vehicle
to the location and parked. The informant went to the back of the house. She left the house
after approximately five to seven minutes and returned to the undercover vehicle. Detective
Morris did not witness the transaction. As Detective Morris backed the vehicle out, the
informant handed her the controlled substance. Detective Morris turned the controlled
substance over to Detective Likens at a separate location and then turned off the recording
device. 

 The informant testified she had worked on several cases for law enforcement as a
confidential informant. She agreed to act as a confidential informant for an undercover
operation to take place where York was living in Willis, Texas. After meeting with
Detectives Likens and Morris on the day of the undercover operation and being searched, the
informant carried a recording device and entered the house in which York was living. She
testified she walked into the home and saw many people were smoking crack. As she was
walking towards Paul a couple of people tried to sell her crack. She walked back to Paul's
bedroom and told Paul she wanted "a hundred pack of crack cocaine." According to the
informant, York sold her five "crack stones." He told her to come back if she needed more
and then she left. 

 The informant admitted she was recently released from jail on a forgery offense and
admitted to using crack cocaine. She admitted using crack a month before trial. She stated
she stayed several days at York's house and used crack there. She accused York of having
sex with her male friend who stayed with her at York's house and of setting up arguments
so she would "get ripped off." She testified she never said she was going to get even with
York. 

 Camille Stafford, criminalist with the Texas Department of Public Safety crime
laboratory in Houston, Texas, testified for the State. Although she did not perform the
testing on the controlled substance for this case, she provided her opinion on the results of
the analysis; she based her opinion on the information contained in the chemical analysis
report. She testified the analysis report showed the controlled substance contained 1.07
grams of cocaine. 

 York testified he listened closely to the tape admitted in evidence as the recording of
the transaction and he could not hear his voice on the tape. He admitted he is a crack cocaine
addict but claims he has never sold crack cocaine. He rented the house for $100 a month. 
He would allow his friends to stay at the house. He said that before and just after he moved
to the house, drugs were often sold in the yard. The police department frequently asked to
search his house because of the drug activity. He stated he has never delivered drugs for
financial reward. 

 York testified the informant traded sexual favors for drugs and that she accused him
of having sex with her boyfriend. On one occasion when she was drunk, she told York she
would get even with him "one way or the other." He believes her motivation is because she
"hated [his] guts. . . ." He also testified she was angry at him because of an altercation at
York's house where she got hit with a lamp. 

 Jimmy Lee Creamer testified for the defense. Creamer testified he met York about
five years earlier and visited York's house seven or eight times a month. He claimed he
visited but did not participate in any drug activity. Creamer explained he was in prison on
a state jail felony conviction. According to Creamer, a woman named "Anna" was often on
Marlin Street. He stated she was a drug addict who had on occasion offered him sexual
favors for drugs. He testified that while people in the house were often selling drugs, York
was usually in the back room of the house watching television. 

 In York's first point of error, he argues the evidence was legally insufficient to
support his conviction because it was based on the testimony of a confidential informant, and
the State presented no other evidence tending to connect York with the offense of delivery
of a controlled substance. Article 38.141 of the Texas Code of Criminal Procedure requires
that testimony of a person who is not a licensed police officer or special investigator but is
acting covertly on behalf of the police be corroborated by other evidence tending to connect
the accused to the offense. See Tex. Code Crim. Proc. Ann. art. 38.141 (a),(b). Testimony
of covert witnesses, like accomplice witnesses, is viewed with caution. Brown v. State, 159
S.W.3d 703, 707 (Tex. App.--Texarkana 2004, pet. ref'd); Young v. State, 95 S.W.3d 448,
451 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). 

 Because the corroboration language of article 38.141 is substantially identical to
article 38.14, which requires corroboration of accomplice witness testimony, courts have
adopted the standards for accomplice witness testimony in applying article 38.141. See, e.g.,
Torres v. State, 137 S.W.3d 191, 196 (Tex. App.--Houston [1st Dist.] 2004, no pet.);
Jefferson v. State, 99 S.W.3d 790, 793 n.3 (Tex. App.--Eastland 2003, pet. ref'd); Young, 95
S.W.3d at 451; Cantelon v. State, 85 S.W.3d 457, 460 (Tex. App.--Austin 2002, no pet.). 
Corroboration of the covert witness testimony is a statutory requirement imposed by the
Texas Legislature. Brown, 159 S.W.3d at 707 (citing Torres, 137 S.W.3d at 196; Cantelon,
85 S.W.3d at 460). Article 38.141 only requires that there be some other evidence that tends
to connect the accused to the commission of the offense alleged in the indictment. Brown,
159 S.W.3d at 707 (citing Torres, 137 S.W.3d at 196); see Hernandez v. State, 939 S.W.2d
173, 176 (Tex. Crim. App. 1997). 

 To determine the sufficiency of the corroborating evidence, we first eliminate the
testimony of the covert witness and ask whether other inculpatory evidence tends to connect
the accused to the commission of the offense. See Cantelon, 85 S.W.3d at 461 (citing
McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). An appellate court reviews
the corroborating evidence in the light most favorable to the verdict. Cantelon, 85 S.W.3d
at 461 (citing Knox v. State, 934 S.W.2d 678, 686-87 (Tex. Crim. App. 1996)). No precise
rule can be formulated regarding the amount of evidence necessary to corroborate testimony. 
Id. An appellate court is to judge each case on its own facts. Id. The corroborating evidence
does not, by itself, have to establish the defendant's guilt beyond a reasonable doubt, but it
does have to tend to connect the defendant to the offense. Brown, 159 S.W.3d at 711; Torres,
137 S.W.3d at 196; McDuff, 939 S.W.2d at 613. 

 The trial court did not instruct the jury that the covert witness testimony must be
corroborated. The defense did not request the instruction or object to the charge as written. 
 The house where the transaction occurred was rented by York, and although he denied
selling drugs, he admitted to drug use. Detective Likens identified York's voice on the
audiotape, and he was listening as the transaction occurred. Although large portions of the
audiotape are inaudible, the informant can be heard asking repeatedly for York and then
making the drug transaction with a male. York testified at trial, and the jury was able to
compare his voice with the voices on the audiotape. Detective Likens testified he had
received information on the house for the past two years. York admitted drug activity often
occurred inside his house. Sufficient corroborative evidence connected York to the drug
transaction. 

 In his second point of error, York maintains the trial court committed fundamental
error in failing to instruct the jury pursuant to article 38.141 of the Texas Code of Criminal
Procedure. He concedes no objection was made to the trial court's failure to charge the jury
pursuant to article 38.141, but maintains the trial court's error resulted in egregious harm. A trial court commits error when the State relies on testimony that is required by
statute to be corroborated and the trial court fails to instruct the jury that there must be
corroborating evidence in order to convict the defendant. See, e.g., Herron v. State, 86
S.W.3d 621, 631 (Tex. Crim. App. 2002). When a trial court commits error in omitting the
corroboration instruction, an appellate court must take into consideration the existence and
strength of the corroborating evidence. Id. at 632. In determining the strength of
corroborating evidence, an appellate court must examine (1) the reliability or believability
of the evidence, and (2) the strength of its tendency to connect the defendant to the offense. 
Id. Claims of fundamental error in the charge to the jury are reviewed under the "egregious
harm" standard set out in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). 
Ellison v. State, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002). Under the egregious harm
standard, the failure to provide the corroboration instruction generally constitutes harmless
error unless the corroborating evidence is "'so unconvincing in fact as to render the State's
overall case for conviction clearly and significantly less persuasive.'" Herron, 86 S.W.3d
at 632 (quoting Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). The
corroborating evidence on this record is not "so unconvincing in fact" and does not render
the State's case less persuasive. We conclude the trial court's failure to instruct the jury
pursuant to article 38.141 of the Texas Code of Criminal Procedure did not result in
"egregious harm." Appellant's issues are overruled. The judgment is affirmed. 

 AFFIRMED.

 ___________________________________

 DAVID GAULTNEY

 Justice




Submitted on August 29, 2006

Opinion Delivered October 25, 2006

Do Not Publish


Before Gaultney, Kreger, and Horton, J.J.