

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00182-CR

_____

JEREMY JEROME GREEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 76th District Court
Titus County, Texas
Trial Court No. 18,377

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

A jury found that Jeremy Jerome Green delivered one gram or more but less than four grams of methamphetamine to a confidential informant, Daniel Edward Rhea. Green pled true to the State's enhancement allegations and was sentenced to seventy years' imprisonment. On appeal, Green argues (1) that Rhea's testimony was not properly corroborated, (2) that the evidence was legally insufficient to convict him, and (3) that the State improperly commented on his failure to testify during closing argument. We find that Rhea's testimony was sufficiently corroborated, that the evidence was legally sufficient to support the jury's finding of guilt, and that Green failed to preserve any complaint regarding comments on his failure to testify. Accordingly, we affirm the trial court's judgment.

## I. Factual Background

Rhea and his wife, Monica Rhea, were arrested for delivering methamphetamine after a narcotics purchase was made at their residence. Rhea informed the arresting Red River County police officer, Skyler Birchenaw, that he purchased methamphetamine from Green, an acquaintance from high school. Birchenaw and Aaron Baxter, a sergeant investigator with the Titus County Sheriff's Office, travelled to the Rheas' home and offered to help them with their pending charges if they would cooperate with the police by becoming confidential informants. The Rheas agreed and were driven in Birchenaw's vehicle to the Titus County Sheriff's Office to review and sign paperwork typically required of confidential informants.

After signing the paperwork, Rhea agreed to immediately participate in a controlled buy of methamphetamine from Green. Rhea placed a recorded telephone call to Green, told Green he

2

had $150.00, and agreed to meet Green at his house.[1]  Baxter, Birchenaw, and the Rheas prepared for the covert operation.  Baxter testified that he patted Rhea down and checked his pockets to make sure that Rhea was not already carrying illegal drugs.  Baxter then outfitted Rhea with an audio/video recording device to capture the transaction.  Rhea and Monica entered Birchenaw's vehicle and travelled to Green's house with Baxter following at a distance in a separate vehicle.

At trial, Baxter testified that according to Rhea, Green was standing next to a washing machine and was weighing methamphetamine.  The poor-quality, hidden-camera footage shows Rhea entering Green's residence and encountering a person, presumably Green, who is bent over a washing machine and is working intently with his hands.  Rhea testified that he purchased approximately $150.00 worth of methamphetamine from Green during the controlled buy.

Birchenaw testified that Rhea exited Green's house after the transaction and immediately handed him the contraband.  On the recording, Rhea informed Birchenaw that Green had approximately two more ounces of methamphetamine in a ziplock baggie placed on the washing machine and that someone else was in the house waiting to purchase drugs.[2]  Rhea and Birchenaw called Baxter to inform him that the controlled buy had been completed.  They agreed to meet Baxter at an undisclosed location to turn the drugs over to him.  Baxter testified, "Rhea told me that they had purchased methamphetamine from Jeremy Green."  Stephanie Jackson, an employee for the Texas Department of Public Safety (DPS) crime laboratory in Tyler, Texas,

---

[1]The audio recording does not specify whether the money was to be exchanged for drugs.

[2]On the recording, Rhea is heard greeting another person in Green's residence.

3

testified that she analyzed the substance turned over to Baxter by Rhea after the controlled buy and determined that it was 2.88 grams of methamphetamine.[3]

## II. Rhea's Testimony Was Sufficiently Corroborated

Green argues that Rhea's testimony should be discounted because it was not sufficiently corroborated. Article 38.141 of the Texas Code of Criminal Procedure reads,

> A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a) (West 2005).

We review confidential informant corroboration just as we would review accomplice witness corroboration. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Brown v. State*, 159 S.W.3d 703, 707 (Tex. App.—Texarkana 2004, pet. ref'd).[4] To determine the sufficiency of the corroboration, we eliminate the testimony of the covert witness and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense when viewed in the light most favorable to the verdict, even if it does not directly link the accused to the crime. *Malone*, 253 S.W.3d at 258; *Cantelon v. State*, 85 S.W.3d 457, 460–61 (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). "[T]he tends-to-connect

---

[3]Baxter obtained a warrant to search Green's house. Green and any additional contraband had disappeared by the time the warrant was executed.

[4]Legal and factual sufficiency standards of review are not applicable to a review of covert witness testimony under Article 38.141 of the Texas Code of Criminal Procedure because corroboration of such testimony is a statutory requirement imposed by the Texas Legislature. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141; *Malone*, 253 S.W.3d at 257; *Brown*, 159 S.W.3d at 707. Thus, a challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the verdict as a whole. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999).

standard does not present a high threshold." *Cantelon*, 85 S.W.3d at 461 (quoting *In re C.M.G.*, 905 S.W.2d 56, 58 (Tex. App.—Austin 1995, no writ)).

Birchenaw testified that Rhea claimed he had purchased drugs from Green in the past. Rhea placed recorded telephone calls to Green after agreeing to conduct a controlled buy of methamphetamine from him. On the recordings, Green advised Rhea to meet him at his residence. Birchenaw witnessed Rhea enter Green's house to complete the transaction. Birchenaw and Baxter both testified that Rhea relinquished methamphetamine immediately upon exiting Green's residence and stated that it was purchased from Green. The jury was provided with a audio/video recording of the transaction.[5]

Viewing the evidence in the light most favorable to the verdict, we find that Rhea's testimony is corroborated by other reliable evidence tending to connect Green to the offense of delivery of methamphetamine. We overrule Green's first point of error.

## III.    Legally Sufficient Evidence Supports Green's Conviction

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found, beyond a reasonable doubt, that Green committed the offense of delivery of a controlled substance in an amount of one gram or more but less than four grams. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing

---

[5]Although the video quality was generally poor in that it failed to depict the actual exchange of drugs for money, the jury was free to determine, consistent with Baxter's statements, that the clearly-depicted figure bent over the washing machine was Green.

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).[6] Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Here, the State was required to prove that Green knowingly delivered one gram or more but less than four grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (West 2010).

During his closing argument, Green argued that the drugs belonged to Rhea and that Rhea's testimony was fabricated to facilitate the reduction or dismissal of charges pending against the Rheas. To support his argument, Green focused on the weakness of the search of Rhea's person before and after the controlled buy. Rhea testified that he changed clothes before leaving with Birchenaw for the Titus County Sheriff's Office. Baxter testified that prior to the

---

[6]In his brief, Green also makes claim of factually insufficient evidence. In *Brooks*, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* [*v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)] factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks*, 323 S.W.3d at 902. Accordingly, we no longer perform factual sufficiency reviews. *See Hutchings v. State*, 333 S.W.3d 917, 919 n.2 (Tex. App.—Texarkana 2011, pet. ref'd).

covert operation, he patted down Rhea and checked his pockets to make sure that Rhea was not already carrying illegal drugs. Baxter admitted that he did not check Rhea's socks for methamphetamine prior to the transaction. Contrary to Baxter's testimony, Rhea testified that neither he nor Monica was searched before or after the controlled buy. Baxter testified that Rhea had no time to prepare any false evidence because he was not informed that he would immediately be purchasing methamphetamine in a controlled buy after leaving his house.

There were discrepancies in the record related to Baxter's search of Rhea before and after the controlled buy. However, Rhea testified that he purchased the methamphetamine from Green. Green's argument was that the jury should have (1) believed that Rhea lied when he testified that he purchased methamphetamine from Green and (2) found that the drugs could have belonged to Rhea because Birchenaw allegedly failed to conduct a thorough search of Rhea.

Green also argues that the evidence was legally insufficient to support the jury's verdict because (1) the recorded telephone calls did not mention drugs, (2) the audio/video recording did not depict an exchange of drugs, (3) and no drugs were found when law enforcement executed a search of Green's residence pursuant to a warrant. However, Rhea's testimony that he purchased a substance from Green (which was later found to be 2.88 grams of methamphetamine) was (1) sufficiently corroborated by audio/video recording and by testimony of Baxter and Birchenaw and (2) could be believed by a rational jury. Therefore, we find the evidence sufficient to support the jury's verdict of Green's guilt. We overrule Green's second point of error.

7

**IV.     Green Failed to Preserve Error Regarding Comment on his Failure to Testify**

The State introduced evidence of prior drug offenses committed by Green during the

punishment phase of Green's trial.  The State argued the following at closing:

> I bet if you ask a person that's been convicted before, "What do you
> expect the jury's going to do when you keep selling drugs, going to the pen, you
> keep selling drugs and going to the pen and you keep selling drugs?  What do you
> expect them to do?" and I think the answer is pretty consistent among those
> people.  Well, they're going to throw the book at you.  That's what needs to
> happen now.
>
> We've tried it before, and he got 25 years, and that didn't do him any
> good.  Ten years didn't do him any more good.  So I think it's time to not think
> about Jeremy Green anymore but think about Titus County and Mount Pleasant
> and keeping him out of here for as long as we can.  That's why the range of
> punishment is so serious and at least what he deserves.
>
> And I don't have any problem at all recommending you give him life
> based on this history, what I've tried and tried and tried again since 1996, tried
> and tried and tried.  And it hasn't corrected him.  *So what else does he expect?*
> *What else?  What else does he expect the jury to do when he's going to act like*
> *this time and time and time again?*

(Emphasis added.)     Green argues that the emphasized portion of the State's argument

commented on Green's failure to testify.[7]

To preserve error for appellate review, a defendant must make a timely request,

objection, or motion in the trial court.  *See* TEX. R. APP. P. 33.1.  When a defendant fails to object

to a jury argument or fails to pursue an objection to a jury argument to an adverse ruling, he

forfeits his right to complain about the jury argument on appeal.  *See Threadgill v. State*, 146

S.W.3d 654, 670 (Tex. Crim. App. 2004); *Sanchez v. State*, 120 S.W.3d 359, 366–67 (Tex. Crim.

---

[7]A comment referring to a defendant's failure to testify must be clear; "[t]he test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."  *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

App. 2003); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Kirvin v. State*, 394 S.W.3d 550, 560 n.16 (Tex. App.—Dallas 2011, no pet.); *Calderon v. State*, 950 S.W.2d 121, 137–38 (Tex. App.—El Paso 1997, no pet). Green admits that no objection was made to the State's argument. Thus, Green has failed to preserve this complaint for our review.[8] We overrule Green's last point of error.

## V.     Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     July 8, 2014
Date Decided:       July 17, 2014

Do Not Publish

---

[8]Green rebutted the State's argument by reminding the jury, "[Green] doesn't have to testify, and you cannot hold that against him. Every one of you promised me yesterday that you would . . . follow this Court's instructions, and it's clear that you cannot take into consideration the fact that he did not testify . . . ."