

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00031-CR

ERICK MARTINEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 47531-B

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Erick Martinez appeals his conviction for aggravated robbery, maintaining that (1) the evidence was insufficient to corroborate the accomplice-witness testimony under Article 38.14 of the Texas Code of Criminal Procedure and (2) the trial court erroneously admitted evidence of Martinez's reluctance to provide his name to deputies. We find that the evidence was sufficient to corroborate the accomplice-witness testimony and that Martinez waived his second point of error. Accordingly, we affirm the trial court's judgment.

## I.    Background

At approximately 2:00 a.m. on January 20, 2018, Tray Moore was awakened by a loud boom coming from his driveway. Moore looked outside and saw that his wife's car was missing. Moore turned on the porch light and saw two individuals walking up his driveway toward his truck. Moore retrieved a gun and then yelled to the individuals to stop.

One of the men fired a shot towards Moore, and Moore returned fire. Moore fired until he ran out of ammunition and then went back inside the house to retrieve another gun. When he returned outside, he saw three young Hispanic men walking down the road. He then heard a "boom, boom" coming from the street, and he saw his wife's vehicle "flying at the end of the road, slam[] on the brakes and pull[] into [his] road." Moore saw two of the individuals get inside the car, but he lost track of the third individual. The car backed up and started to leave when someone inside the car shot at Moore two more times. That person was later identified as

Michael Serrano,[1] and according to Moore, Serrano was the first person to shoot during the incident.

After the men drove away, Moore noticed a "glowing phone" on the lawn next to the driveway. Moore answered the phone and heard a Hispanic voice yell the names Antonio and Mario and then ask, "Hey, where y'all at? Where y'all at? Man, I'm down here and the police are coming. I can see the police coming down the street." Moore then ran down the street and stopped the police to tell them that the individuals had just driven away in his car. He gave them the phone that he had found on his lawn and gave them his statement. Moore said the individuals appeared to be "pretty wired up," and they seemed to be "on drugs or something." Moore described the individuals as being young Hispanic males, wearing khaki pants, white shirts, and "their little tube socks up high tucked in, baggy clothing."

The grand jury indicted Martinez for the offense of aggravated robbery, alleging that, on or about the 20th day of January 2018,

> while in the course of committing theft of property and with intent to obtain or maintain control of the property, [the Defendant did] intentionally or knowingly threaten or place Tray Moore in fear of imminent bodily injury or death, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said robbery[.]

A jury found Martinez guilty of aggravated robbery and sentenced him to serve thirty-two years' confinement in prison. He timely filed this appeal.

---

[1]Prior to Martinez's trial, Serrano pled guilty to aggravated robbery and, in exchange for agreeing to testify at Martinez's trial, Serrano was sentenced to twelve years' confinement in prison. In addition, the State also agreed to drop various felony and misdemeanor charges that had been pending against Serrano.

## II.    Discussion

### A.    There Was Sufficient Independent Evidence to Corroborate the Accomplice-Witnesses' Testimony

In his first point of error, Martinez maintains that there was insufficient independent evidence to corroborate the testimony of his accomplice witnesses, Juarez and Serrano. We disagree.

#### 1.    Standard of Review

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. Article 38.14 requires corroboration of accomplice-witness testimony, but there is no exact rule as to the amount of evidence required for corroboration. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). "All that is required is that there be *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *see also Jeffery v. State*, 169 S.W.3d 439, 448 (Tex. App.—Texarkana 2005, pet. ref'd). Such evidence may be either direct or circumstantial. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

The test for weighing the sufficiency of corroborating evidence is to eliminate from consideration the accomplice's testimony and then examine the remaining testimony and evidence to determine if there is evidence that tends to connect the defendant with the commission of the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Reed*,

4

744 S.W.2d at 125; *Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd). The non-accomplice testimony does not have to directly link the accused to the crime, it alone need not establish guilt beyond a reasonable doubt, and the corroborating evidence is not required to prove all the elements of the alleged offense. *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Reed*, 744 S.W.2d at 126; *Jeffrey*, 169 S.W.3d at 448.

The accused's presence at the scene of the crime is, by itself, insufficient to corroborate an accomplice's testimony. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Yet, "evidence that an accused was in the company of the accomplice close to the time of the offense, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Gill*, 873 S.W.2d at 49; *see also Reed*, 744 S.W.2d at 127; *Jeffrey*, 169 S.W.3d at 447; *Brown v. State*, 159 S.W.3d 703, 708 (Tex. App.—Texarkana 2004, pet. ref'd). Moreover, while evidence that merely shows only motive or opportunity to commit the crime is, by itself, insufficient to corroborate the accomplice-witness testimony, it may "be considered in connection with other evidence tending to connect the accused with the crime." *Reed*, 744 S.W.2d at 127. "Cumulative evidence of 'suspicious circumstances' may be sufficient even if none of the circumstances would be sufficient individually." *Jeffrey*, 169 S.W.3d at 447; *see also Brown*, 159 S.W.3d at 708. In the end, every case "must be considered on its own facts and circumstances—on its own merit." *Munoz*, 853 S.W.2d at 559; *see also Reed*, 744 S.W.2d at 126.

Finally, only in-court testimony is subject to the Article 38.14 requirement of corroboration. *Maynard v. State*, 166 S.W.3d 403, 410 (Tex. App.—Austin 2005, pet. ref'd); *see*

5

*also Nguyen v. State*, 177 S.W.3d 659, 669 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ("The accomplice statute [article 38.14] does not apply to out-of-court statements."); *Hammond v. State*, 942 S.W.2d 703, 707 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (stating that testimony of witnesses concerning accomplice's out-of-court statements and actions was not required to be corroborated as accomplice testimony under Article 38.14). The Court of Criminal Appeals has held that the accomplice "testimony" that must be corroborated is that testimony given by competent witnesses under oath or affirmation, as distinguished from evidence derived from writings and other sources, and it does not include evidence of out-of-court statements of an accomplice. *Bingham v. State*, 913 S.W.2d 208, 210 (Tex. Crim. App. 1995) (op. on reh'g).

### 2. Analysis

Here, the State concedes that Juarez and Serrano were accomplices; therefore, we must disregard their trial testimony in our analysis and determine whether the other evidence "tends to connect" Martinez to the crime. *See Munoz*, 853 S.W.2d at 559. The State points to the following evidence to establish that connection.

#### a. Harrison County Sheriff's Deputy David Newsom's Encounter with Juarez, Serrano, and Martinez on the Day of the Robbery

Harrison County Sherriff's Deputy David Newsom testified that, at approximately 5:00 p.m. on January 20, 2018, he was dispatched to Alejandro Juarez's home in response to a report that someone had been discharging a firearm in the area. Upon his arrival, Newsom saw five males whom he believed to be in their teens or early twenties standing on the porch area.

6

Newsom testified that Juarez's brother, Armando, and Juarez's cousin, Serrano, were also on the porch. The young men immediately admitted that they had been shooting the weapon.

Newsom asked for their names and identification. Some of the young men gave Newsom the requested information; however, one of them, who was later identified as Martinez, initially refused to give Newsom his name or any identification, stating, "I don't think I've done anything wrong." At trial, Newsom identified Martinez as that man. Newsom elaborated that, when he asked Martinez how old he was, Martinez gave Newsom three different ages, finally settling on nineteen years of age. Eventually, Newsom placed Martinez in handcuffs for safety reasons. Subsequently, one of the individuals went inside the house and returned with the 9-millimeter-caliber pistol that they had been firing. Newsom determined that the gun had never been reported as a stolen weapon and removed Martinez's handcuffs. Newsom did not make a report or make any arrests.

Newsom also testified that, later in the evening, he received a phone call from Harrison County Investigator Ron England requesting he return to Juarez's house to investigate a possible stolen vehicle. Newsom said that he returned to Juarez's house and located the car. He ran its license plate, but the car did not return as being a stolen vehicle. Newsom explained, "It means it -- it means that at that moment, at that time, it was not in the system as a stolen vehicle." It was subsequently determined that the vehicle Newsom observed at Juarez's house was Moore's wife's car that had been stolen earlier that day.

### b. Investigator Ashworth's Testimony

Dustin Ashworth, an investigator with the Longview Police Department, testified that fingerprints retrieved from Moore's truck and from shell casings found near his home belonged to Juarez. Ashworth also testified that Moore said the three men who stole his wife's car were Hispanic; that the first one was tall and had a designer haircut; that the second suspect was heavy-set, shorter than the first suspect and wore a red jacket; and that the third suspect was not as tall as the first suspect but was taller than the second suspect. Ashworth testified that, based on his investigation, he believed Martinez was the third suspect. In addition, Ashworth reviewed the body-camera recording from Deputy Newsom and testified that Martinez had been at Juarez's home when officers were dispatched to the house to investigate a report of gunshots being fired. According to Ashworth, Martinez was evasive with the responding officers during that encounter. Likewise, Martinez was also present at Juarez's house later in the evening when the stolen car was there.

### c. Juarez's Out-of-Court Statement to Investigator Ashworth

On January 25, 2019, Ashworth interviewed Juarez, who eventually admitted that he had been at Moore's house "at the time of the shooting and at the time that everything had occurred." Juarez also said that Martinez was the one who initially took Moore's wife's car and that he also wanted to go back to Moore's home to steal the truck. Further, Juarez told Ashworth that he went back with Martinez to steal the truck and that Serrano was involved as well. Juarez also told Ashworth that, if they found fingerprints or DNA, both would belong to him.

8

### d. Conclusion

Viewed in the light most favorable to the jury verdict, the non-accomplice-witness evidence in this case provided the necessary corroboration of the accomplice-witness testimony. Newsom's and Ashworth's testimony established that Martinez was present with Juarez and Serrano at Juarez's house within twenty-four hours after the robbery had been committed and that the men had been firing a firearm. Investigator Ashworth also testified that Moore's stolen vehicle was located at that same location later that evening. The jury could also have considered Martinez's repeated failure to give Newsom his name or other identifying information as Martinez's demonstrated consciousness of guilt that he had just committed the robbery.

In addition, in his out-of-court statement to Ashworth, Juarez identified Martinez as the person who stole Moore's car and said that Martinez came up with the idea to go back to Moore's house and steal Moore's truck using keys he found in Moore's car. Juarez added that Martinez went back to Moore's house with him attempting to carry out Martinez's plan to steal Moore's truck. Accordingly, the jury was free to find that Juarez's out-of-court statements to Ashworth corroborated Serrano's in-court testimony linking Martinez to the robbery.[2]

---

[2]To the extent there were any differences between Serrano's or Juarez's trial testimony and the information they gave during their interviews, or their accomplice-witness testimony was inconsistent, the jury, as the sole judge of the weight and credibility of the evidence, was free to resolve those differences in favor of the State. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) ("The jury . . . may 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014))). Moreover, when an appellate court conducts an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence nor may we substitute our judgment for that of the fact-finder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Rather, we determine whether the necessary inferences are reasonably based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murry v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

Given all the facts and circumstances in this case, both the direct and circumstantial evidence, we conclude that the non-accomplice-witnesses' testimony and Juarez's out-of-court statements "tend[ed] to connect [Martinez] to the commission of the offense alleged in the indictment." *See Gill*, 873 S.W.2d at 48; *see also Jeffery*, 169 S.W.3d at 448. Accordingly, we overrule Martinez's first point of error.

**B.      Martinez Waived His Second Point of Error Regarding the Admission of His Refusal to Identify Himself**

In his second point of error, Martinez maintains that the trial court reversibly erred when it admitted Harrison County Investigator David Newsom's testimony that Martinez repeatedly refused to identify himself to the deputies. For the reasons below, we find that Martinez has waived his complaint on appeal.

On the first day of the trial, and outside the presence of the jury, the court noted that there had "been some objections to [the admission of Newsom's] body[-]cam footage," which footage contained Newsom's interactions with Martinez at Juarez's home and included Martinez's repeated failure to identify himself despite Newsom's requests. Martinez argued, among other things, that the admission of that portion of the body-cam recording violated Rules 401 and 403 of the Texas Rules of Evidence. The trial court watched the body-cam footage "almost in its entirety" and overruled Martinez's objections. However, the trial court specifically stated, "[A]s far as the video portion, I will allow it. And then I'm going to rule that the audio portion is not allowed at this time unless some way the door gets opened to that." The trial court asked both parties if they had any further business in front of the court. They did not.

10

The following morning, when the jury returned to the courtroom, the State began its questioning of Newsom. Specifically, the State asked, "And then there was a fourth male that initially refused to identify himself to you?" Newsom answered, "Yes, ma'am." When asked which male it was, Newsom stated, "Eric Martinez." Martinez raised no objection of any kind.

The preservation of error is a systemic requirement on appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012). "To preserve error, a party must object and state the ground for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context." *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (citing TEX. R. APP. P. 33.1(a)(1)). "The objection must be sufficiently clear to give the judge and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Id.* "If a trial objection does not comport with the argument on appeal, error has not been preserved." *Id.*

Although Martinez objected to the admission of Newsom's body-cam recording pursuant to Rules 401 and 403, he did not make a specific objection, either before or during trial, to Newsom's testimony relating to Martinez's failure to identify himself. Thus, Martinez's complaint on appeal does not comport with his objection at trial. Accordingly, Martinez has failed to preserve this issue for our review.

We overrule Martinez's second point of error.

11

### III.    Conclusion

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice

Date Submitted:    November 23, 2020
Date Decided:      November 12, 2021

Do Not Publish