

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00131-CR

CORNELL MCHENRY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 12F0117-202

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Justice Carter

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

In Bowie County, Texas, Cornell McHenry was indicted on one count of possession of a controlled substance—methamphetamine—in an amount of four or more grams, but less than 200 grams. A jury convicted McHenry and assessed his punishment at twenty-five years' confinement and a $5,000.00 fine.[1]

On appeal, McHenry contends (1) that the evidence is insufficient to corroborate the accomplice witness' testimony and that the remaining evidence is insufficient to support the verdict;[2] (2) that the trial court erred by failing to instruct the jury that DeQueener Mitchell was an accomplice to the offense; and (3) that the trial court erred by failing to give a limiting instruction upon the introduction of extraneous-offense evidence.

I.      Factual Background

Several police officers, including Sergeant Mike Jones of the Texarkana, Texas, Police Department, testified that during their surveillance of McHenry's house located at 516 Waterman Street in Texarkana, they saw people drive up to the residence in vehicles, get out of the vehicles, enter the residence, then, a few minutes later, exit the residence, and drive away. If, during the course of their surveillance, the officers observed a driver of one of the departing vehicles commit a traffic violation, the officers initiated a traffic stop of that vehicle. During the course of these

---

[1]Due to McHenry having previously been convicted of a felony, the punishment range for this offense was enhanced to that of a first-degree felony.

[2]McHenry also argues that there is factually insufficient evidence to support his conviction. In *Brooks v. State*, 323 S.W.3d 893, 894–95, 912–13 (Tex. Crim. App. 2010) (plurality opinion) (4-1-4 decision), the Texas Court of Criminal Appeals recognized that a factual sufficiency review is subsumed by a properly conducted legal sufficiency review and, therefore, abolished the separate factual sufficiency review test established by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny.

2

traffic stops, the officers discovered illegal drugs, including one instance of crystal methamphetamine, in several of the automobiles.[3]

After several months of intermittent surveillance, a confidential informant bought drugs at McHenry's house, prompting the officers to obtain a "no-knock" warrant to enter and search the house. McHenry and his live-in girlfriend, DeQueener Mitchell, were the only people in the house at the time of the search. The officers' search of the house uncovered two baggies containing a total of 4.55 grams of methamphetamine concealed inside a flashlight in the bedroom.[4] Officers also found two sets of digital scales, several plastic baggies, and what was suspected to be marihuana and prescription hydrocodone pills. Jones testified that the plastic baggies were commonly used in "packaging illegal drugs" and that the scales were often used to weigh out quantities of drugs for sale.

Officers also found $1,395.00 on McHenry. The money was wrapped in rubber bands, which according to Officer Kevin Lewis, is common for people involved with drugs. Also according to Lewis, McHenry stated that the cash was from his income tax refund. Lewis further testified that McHenry claimed he worked at Rimcor, though that was later determined to be false. According to Mitchell, McHenry was not employed at the time of the search, and she did not know him to maintain steady employment.

---

[3]The testifying officers admitted that no drugs were found on McHenry, that they had never seen drugs being sold at McHenry's residence, and that they had no personal knowledge of when, where, or from whom the methamphetamine found during the traffic stops was acquired.

[4]The State failed to dust the flashlight for fingerprints or check the flashlight for DNA evidence. Officer Dustin Thompson testified that he had no personal knowledge of who owned the flashlight or who put the methamphetamine in the flashlight.

The officers also found mail in the house addressed to McHenry, as well as McHenry's insurance card, all of which identified 516 Waterman Street as McHenry's address.

At trial, Mitchell testified for the State. She testified that she and McHenry lived in the house at 516 Waterman Street. Further, while Mitchell admitted that she had smoked marihuana and taken prescription pills in the past, she denied ever using methamphetamine. Mitchell testified that the flashlight and the methamphetamine found inside of it belonged to McHenry. She further testified that she had seen McHenry put methamphetamine in the flashlight in the past and that she had also seen him use, sell, and trade methamphetamine.

Just like McHenry, Mitchell was also arrested and charged with several counts of possession of a controlled substance, one of which was a felony. On the misdemeanor counts, she spent a few days in jail. On the felony count of possession of a controlled substance—methamphetamine—in an amount more than four but less than 200 grams, Mitchell pled guilty and was placed on ten years' community supervision. At McHenry's trial, Mitchell testified that she pled guilty because some of the drugs found in the home were hers. In the criminal proceedings against Mitchell, she claimed ownership of the methamphetamine discovered in the home; however, at McHenry's trial, she recanted that statement and claimed that the methamphetamine was McHenry's. Mitchell claimed she was lying when she previously claimed that the methamphetamine was hers and stated that she signed the plea documents "because [she] didn't have no one there to read nothing what I was signing."

After Mitchell pled guilty to the charges filed against her, Debbie Burns, with the Bowie County Community Supervision and Corrections Department, interviewed Mitchell as a part of

4

her presentence investigation. According to Burns, Mitchell stated during the interview that she had been selling drugs or pills since the age of fourteen, that she was selling drugs at her residence, and that she made between $100.00 and $500.00 per week. At McHenry's trial, Burns testified that after discussing the case with Mitchell, she had "[n]o doubt" that Mitchell understood "everything that was going on."

Mitchell testified that while she was on community supervision, McHenry asked her to accompany him to his attorney's office so she could sign an affidavit "because [she] was going to save him or he was going to do time." Mitchell claimed that when they arrived at the attorney's office, she was given an affidavit and told to sign it. She signed the affidavit, swearing that drugs found in the home, including the methamphetamine, belonged to her. She further swore in the affidavit that the police wanted her to say that the drugs were McHenry's. According to Mitchell, McHenry told her that if she signed the affidavit, "he would not be going down or he [could] get the money back." At trial, Mitchell claimed that she could not read the affidavit[5], did not understand the affidavit, and only signed the affidavit because she still had feelings for McHenry.[6] Notwithstanding her signature, she testified at trial that the statements in the affidavit were false.

---

[5]Mitchell claimed she had trouble reading due to a car accident when she was young.

[6]McHenry questioned Mitchell about a second affidavit, supposedly seen and discussed in the office of attorney Clyde Lee. Lee testified that McHenry and a woman came to his office regarding possible legal representation and that they had an executed affidavit wherein the woman took responsibility for the drugs found in the house. Lee could not remember whether Mitchell was the woman with McHenry. As only one affidavit was entered into the record—the one executed at the office of McHenry's attorney and admitted as State's Exhibit 17—it is unclear from the record whether the affidavit seen in Lee's office is State's Exhibit 17 or a different affidavit.

Mitchell denied that her trial testimony was motivated by bad feelings towards McHenry. She testified that the State did not promise her anything in exchange for her testimony and that her appearance had no effect on her community supervision status.

Mitchell's community supervision officer, Carville Goode, testified that Mitchell had a "limited ability to read and write" and a literacy level of "second grade . . . or . . . elementary school." Goode opined, based on his experience with Mitchell, that she lacked the mental capacity to run a drug house by herself.

## II.  Corroboration of Accomplice's Testimony

In his first point of error, McHenry contends that the evidence is insufficient to corroborate accomplice Mitchell's testimony and that without her testimony, the remaining evidence is insufficient to support the verdict.[7]  Article 38.14 of the Texas Code of Criminal Procedure states, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."  TEX. CODE CRIM. PROC. ANN.

---

[7]In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Williams v. State*, 305 S.W.3d 886, 889 (Tex. App.—Texarkana 2010, no pet.).  The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.  A person commits the offense of possession of a controlled substance if he knowingly or intentionally possessed a controlled substance.  TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010).

art. 38.14 (West 2005). This corroboration requirement is neither constitutionally mandated nor part of our common law. Rather, Article 38.14 reflects the Texas Legislature's determination that the incriminating testimony of an accomplice "should be viewed with some level of caution." *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994); *see also Brown v. State*, 159 S.W.3d 703, 707 (Tex. App.—Texarkana 2004, pet. ref'd) (discussing covert witness rule of Article 38.141 and its parallels to Article 38.14's accomplice-witness rule).

Article 38.14 requires the corroboration of an accomplice's testimony, but it does not define the quality or quantity of evidence required to satisfy the corroboration requirement. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Texas courts have ultimately concluded that all that is required is "some non-accomplice evidence which tends to connect the accused to the commission of the offense alleged in the indictment." *Gill*, 873 S.W.2d at 48; *see also Jeffery v. State*, 169 S.W.3d 439, 448 (Tex. App.—Texarkana 2005, pet. ref'd) (covert witness case, but corroboration analysis same for both covert and accomplice witnesses); *Brown*, 159 S.W.3d at 707–08. Such evidence may be either direct or circumstantial. *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

In evaluating the sufficiency of the corroboration evidence, we must eliminate from consideration the accomplice testimony and then examine the remaining evidence to ascertain whether it tends to connect the defendant to the offense. *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd). The non-accomplice testimony does not have to directly link the accused to the crime, does not, alone, have to establish guilt

beyond a reasonable doubt, and does not have to prove all the elements of the alleged offense. *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Reed*, 744 S.W.2d at 126; *Jeffery*, 169 S.W.3d at 448. The accused's presence at the scene of the crime is, by itself, insufficient to corroborate an accomplice's testimony. However, "evidence that an accused was in the company of the accomplice close to the time of the offense, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Gill*, 873 S.W.2d at 49; *see also Reed*, 744 S.W.2d at 127; *Jeffery*, 169 S.W.3d at 447; *Brown*, 159 S.W.3d at 708. Moreover, while evidence that addresses only motive or opportunity to commit the crime is, by itself, insufficient to corroborate an accomplice's testimony, motive or opportunity evidence may be considered in conjunction with other evidence tending to connect the accused to the crime. *Reed*, 744 S.W.2d at 127. "Cumulative evidence of 'suspicious circumstances' may be sufficient even if none of the circumstances would be sufficient individually." *Jeffery*, 169 S.W.3d at 447; *see also Brown*, 159 S.W.3d at 708. In the end, every case "must be considered on its own facts and circumstances—on its own merit." *Munoz*, 853 S.W.2d at 559; *see also Reed*, 744 S.W.2d at 126.

The non-accomplice evidence in this case established (1) that McHenry lived at 516 Waterman Street; (2) that people frequently arrived at McHenry's home, stayed a few minutes, and then left; (3) that several of these in-and-out visitors were found to be in possession of drugs, including one instance of methamphetamine, immediately after leaving McHenry's home; (4) that a confidential informant bought drugs in McHenry's house; (5) that when the residence was searched, officers found a substance suspected to be marihuana, pills suspected to be prescription medication, methamphetamine, two sets of digital scales, and plastic baggies; (6) that, based on

8

the knowledge and experience of testifying officers, digital scales and plastic baggies are frequently used in the sale of illegal drugs; (7) that the methamphetamine was found hidden in a flashlight in a bedroom; (8) that Officer Thomson observed McHenry exiting that same bedroom when the police entered the house; and (9) that McHenry had $1,395.00 in cash on his person despite a lack of any credible evidence suggesting that he was lawfully employed.

We find that this non-accomplice evidence, at the very least, tends to connect McHenry to the commission of the offense of possession of a controlled substance—methamphetamine—in an amount of four or more, but less than 200 grams. *See Gill*, 873 S.W.2d at 48. Consequently, Mitchell's testimony was properly before the jury. We overrule McHenry's first point of error.[8]

## III. Failure to Instruct Jury that Mitchell Was an Accomplice as a Matter of Law

In his second point of error, McHenry argues that the trial court erred by failing to instruct the jury that Mitchell was an accomplice as a matter of law. Instead, the trial court instructed the jury members that they could find Mitchell to have been an accomplice as a matter of fact, but that they were not required to do so.

"Our review of alleged jury charge error involves a two-step process." *Andrews v. State*, 429 S.W.3d 849, 862–63 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Initially, we determine whether an error occurred, and then we 'determine whether sufficient harm resulted

---

[8]McHenry only challenged the sufficiency of the evidence in the absence of Mitchell's accomplice testimony. Having found that the State produced sufficient evidence to corroborate Mitchell's accomplice testimony, we need not address the sufficiency of the evidence.

from the error to require reversal.'" *Andrews*, 429 S.W.3d at 731–32 (quoting *Abdnor*, 871 S.W.2d at 731–32) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)); *see also Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

"An accomplice witness is someone who has participated with another before, during, or after the commission of a crime." *Villarreal v. State*, 576 S.W.2d 51, 56 (Tex. Crim. App. 1978); *see Russell v. State*, 598 S.W.2d 238, 249 (Tex. Crim. App. 1980). "A witness who is indicted for the same offense as the offense for which the accused is being tried or for a lesser included offense based on his alleged participation in the commission of the greater offense and who testifies for the State against the accused is an accomplice as a matter of law." *Smith v. State*, No. 06-93-00109-CR, 1994 WL 1059313, at *1 (Tex. App.—Texarkana Nov. 23, 1994, pet. ref'd) (citing *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991); *Burns v. State*, 703 S.W.2d 649, 651 (Tex. Crim. App. 1985); *Hendricks v. State*, 508 S.W.2d 633,634 (Tex. Crim. App. 1974)). Here, Mitchell was charged with the same offense as McHenry—possession of more than four grams, but less than 200 grams, of methamphetamine—indicating her involvement in the crime. Further, she testified for the State against McHenry; consequently, she is an accomplice as a matter of law.

"When the evidence clearly shows that a witness is an accomplice as a matter of law, the trial court is under a duty to so instruct the jury[,] and its failure to do so may constitute reversible error." *Smith*, 1994 WL 1059313, at *1 (citing *Solis v. State*, 792 S.W.2d 95, 97 (Tex. Crim. App. 1990); *Burns*, 703 S.W.2d at 651). Therefore, the trial court erred, and we must "determine whether sufficient harm resulted from the charging error to require reversal." *Abdnor*, 871 S.W.2d at 731–32. "The level of harm an appellant must demonstrate as having resulted from the

10

erroneous jury instruction depends on whether the appellant properly objected to the error."

*Andrews*, 429 S.W.3d at 863 (citing *Abdnor*, 871 S.W.2d at 732).

Here, the jury charge reads, in pertinent part:

> A person cannot be convicted of a crime on the uncorroborated testimony of an accomplice. An accomplice is someone whose participation in the crime would permit his conviction for the crime charged in the indictment.
> You must determine whether Dequeener Mitchell is an accomplice to the crime of Possession of a Controlled Substance, if it was committed. If you determine that Dequeener Mitchell is an accomplice, you must then also determine whether there is evidence corroborating the testimony of Dequeener Mitchell.

McHenry did not object to the charge.

"Where the evidence clearly shows a witness is an accomplice as a matter of law, the trial court must so instruct the jury, but if the appellant fails to object to the omission of the instruction, as in [this] case, he or she must prove egregious harm to prevail on appeal." *Hall*, 161 S.W.3d at 149; *see Ngo*, 175 S.W.3d at 743–44 (citing *Almanza*, 686 S.W.2d at 171); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). In determining whether egregious harm has been shown, we "must take the entire record into account, as in any *Almanza* analysis." *Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012).

Here, we have previously determined that Mitchell's testimony was sufficiently corroborated by the other evidence in the case. Since the evidence undisputedly shows that Mitchell was an accomplice,[9] it is reasonable to conclude that the jury determined that she was an accomplice and required corroboration of her testimony. Taking the entire record into account,

---

[9]The State referred to Mitchell as a co-defendant.

11

we conclude that the trial court's failure to instruct the jury that Mitchell was an accomplice as a matter of law did not egregiously harm McHenry. Therefore, we overrule this point of error.

## IV.     Failure to Give Limiting Instruction when Extraneous-Offense Evidence Introduced

In his final point of error, McHenry contends that the trial court erred by failing to give an instruction to the jury limiting the use of extraneous-offense evidence at the time the evidence was presented. In a pretrial hearing, McHenry asked that a limiting instruction be given before the police officers testified because they would be testifying about the vehicles coming to and going from McHenry's house and the drugs discovered in certain vehicles stopped after leaving McHenry's house.[10] The trial court denied McHenry's request to give an instruction before the officers testified, but indicated it would give a limiting instruction in the jury charge.

Under Rule 105(a) of the Texas Rules of Evidence, when evidence is admissible for one purpose but not for another purpose, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." *See* TEX. R. EVID. 105(a). There is no requirement that the request be in writing. Although Rule 105(a) does not impose a specific requirement regarding the timing of the trial court's limiting instruction, the Texas Court of Criminal Appeals has held that "logic demands that the instruction be given at the first opportunity." *Rankin v. State*, 974 S.W.2d 707, 712 (Tex. Crim. App. 1996). The court held that when a party requests a limiting instruction at the time evidence of extraneous offenses is admitted, the trial court must instruct the jury at that time and cannot satisfy its duty by waiting until the jury charge at the close of the

---

[10]McHenry submitted a proposed limiting instruction.

evidence. *See id*. at 711–13; *Mendiola v. State*, 995 S.W.2d 175, 183 (Tex. App.—San Antonio 1999), *rev'd on other grounds*, 21 S.W.3d 282 (Tex. Crim. App. 2000).

Here, the State presented police testimony that people frequently drove up to McHenry's residence, went inside, stayed for a short period of time, and then left and that illegal drugs, including methamphetamine, were found in some of the vehicles shortly after they had left McHenry's house. In a pretrial hearing, McHenry objected to the testimony and requested a limiting instruction. Stating that it would provide a limiting instruction in the court's charge, the trial court overruled McHenry's objection and denied his request. In situations such as this, a defendant is entitled to have a limiting instruction given to the jury as to extraneous incidents. *Rankin*, 974 S.W.2d at 711–13; *see Crawford v. State*, 696 S.W.2d 903, 905–06 (Tex. Crim. App. 1985). We hold, therefore, that the trial court erred by failing to give a contemporaneous limiting instruction.[11]

We now consider whether the trial court's error is reversible. *See* TEX. R. APP. P. 44.2(b). The erroneous admission of extraneous-offense evidence does not constitute constitutional error. *See Avila v. State*, 18 S.W.3d 736, 741–42 (Tex. App.—San Antonio 2000, no pet.). Thus, we are to disregard the error unless it affected McHenry's substantial rights. *See* TEX. R. APP. P. 44.2(b). In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the error might be considered in connection with other

---

[11]We render no opinion regarding whether McHenry was entitled to the specific instruction he submitted as part of his request for a limiting instruction.

13

evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). "The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments[,] and even voir dire, if applicable" as well as "whether the State emphasized the error." *Id.* at 355–56.

In analyzing the harm resulting from the denial of a timely request for an extraneous-offense limiting instruction, we specifically consider: (1) the extent of other evidence introduced; (2) whether the trial court gave a limiting instruction in the jury charge; (3) the length of time between the introduction of the extraneous-offense evidence and the trial court's charging of the jury; and (4) whether the extraneous offenses were "more heinous or inflammatory" than the charged offense. *Jones v. State*, 944 S.W.2d 642, 654 (Tex. Crim. App. 1996); *see Jones v. State*, 119 S.W.3d 412, 424–25 (Tex. App.—Fort Worth 2003, no pet.).

As discussed above, the record reflects ample evidence of McHenry's guilt. McHenry lived at 516 Waterman Street. A confidential informant bought drugs in the house, and when the house was searched, methamphetamine was found hidden in a flashlight in the bedroom. As the police entered the house to search it, Officer Thompson saw McHenry walking out of the bedroom. Mitchell, McHenry's live-in girlfriend, testified that the methamphetamine was McHenry's and that that she had seen him hide methamphetamine in the flashlight in the past.

Three police officers testified that people frequently made very short visits to McHenry's house, staying only a few minutes at a time, and officers discovered drugs, including one instance of methamphetamine, in the vehicles of several of these in-and-out visitors immediately after they

14

left McHenry's house.[12] When considered in connection with the other evidence in the case, the officer's testimony could give rise to the inference that McHenry was a drug dealer; however, the officers did not directly state that McHenry had committed an extraneous offense. *See Rankin*, 974 S.W.2d at 708 (victim's friend and sister also testified that defendant fondled their "privates"); *Lemmons v. State*, 75 S.W.3d 513, 521 (Tex. App.—San Antonio 2002, pet. ref'd) (three witnesses allowed to testify that murder defendant robbed them at gunpoint). On cross-examination, the officers admitted that no drugs were found on McHenry's person, that they had never actually observed a drug transaction at McHenry's residence, and that they could not state from personal knowledge that the drugs discovered during the traffic stops were acquired from McHenry.

The three officers who testified to the extraneous bad acts were the first three witnesses to testify in the case. While the jury received a proper limiting instruction in the jury charge, the charge was given about six hours after testimony began in this one-day trial. *See Lemmons*, 75 S.W.3d at 525 (extraneous-offense testimony elicited through three witnesses during last three or four hours of multi-day trial). Absent evidence to the contrary, the jury is presumed to follow the instructions set forth in the trial court's charge. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996), *overruled on other grounds by Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013). McHenry has not rebutted this presumption.

Under these circumstances we conclude that, in the context of the entire case against McHenry, the trial court's error in admitting the testimony in question did not have a substantial

---

[12]The State briefly mentioned the testimony during its opening statement and did not emphasize the evidence during its closing argument.

or injurious effect on the jury's verdict and did not affect McHenry's substantial rights. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Accordingly, we disregard the error and overrule this point of error. *See* TEX. R. APP. P. 44.2(b).

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     April 15, 2015
Date Decided:       June 5, 2015

Do Not Publish